E. P. McMANUS v. CALVIN HORNADAY, Appellant.

99   507
106   679
99   507
111   314
99   507
118   637
99   507
124   275
99   507
126   684
99   507
130    68
130    69

**Municipal Corporations.** POWERS: *Construction.* When a mode of exercising a power granted to a municipal corporation is prescribed, the power can be exercised only in that mode.

SAME. In determining whether or not a power is conferred upon a municipal corporation, charters and statutes are strictly construed, but when the power is ascertained to be conferred, the exercise of authority within recognized limits is favored by the courts.

RULE APPLIED. The authority to change the grade of streets, conferred upon the city council by charter authorizing the council to make and publish such laws and ordinances as shall seem necessary to improve the comfort of the city and its inhabitants, and giving it exclusive power to establish and regulate the grade of streets within the corporate limits, must be exercised by ordinance, and cannot be exercised by a mere resolution of the council.

SAME: *Special taxes.* A city has no authority to tax abutting prop-
6 erty for the cost of temporary improvements—as, the paving and
guttering of a street at a grade other than the established—
although the property is benefited thereby.

*Appeal from Keokuk Superior Court.*—HON. JOSEPH C.
BURK, Judge.

FRIDAY, OCTOBER, 23, 1896.

ACTION in equity for judgment on a paving assess-
ment certificate issued by the city of Keokuk to the
plaintiff, and for decree establishing the same as a lien
upon certain real estate belonging to the defendant,
and foreclosing said lien. The issues will sufficiently
appear in the opinion. Decree was entered in favor
of the plaintiff. Defendant appeals.—*Reversed.*

*John E. Craig* for appellant.

*A. Hollingsworth* for appellee.

GIVEN, J.—I. The case was submitted upon an
agreed statement of facts, the material parts of which
are as follows: The defendant is, and has been for
five years past, the owner of the property referred to in
the petition, which property abuts upon Orleans street,
in said city, from and at the intersection of said street
with Fourth street. By the revised ordinances of 1887,
of said city, the grade of Orleans street, at the inter-
section of Fourth and Third streets, was established.
On July 3, 1893, and before the improvement referred
to in the petition was made, the city council of said
city passed a resolution, as follows: "*Resolved,* That
the grade on Orleans street, from Fourth street to the
top of the piling between Fourth street and Third
street, be, and is hereby, changed in accordance with
the attached plan and petition, which said plat shows
Orleans at intersection with Fourth street, at 133 feet

above the plane of reference, and at the southeastern point, near the piles, at 125.5 feet above the plane of reference, which said resolution, plat, and petition, are to be considered as part hereof." No ordinance changing the grade of Orleans street was ever passed. On July 3, 1893, said city council ordered Orleans street from Fourth to the top of the piling between Fourth and Third streets, curbed, guttered, and macadamized, at the grade fixed in the said resolution; the work to be paid for in accordance with General Ordinance 252, by the abutting owners. A contract was entered into by the city and plaintiff, and the plaintiff furnished the materials and did the work, at the grade fixed in said resolution. To defray the expenses of said work, an assessment was made and levied by the city council against the abutting property, including that of the defendant; the assessment against the defendant being one hundred and seventeen dollars and three cents, for which the certificate sued upon was issued. No proceedings were had to ascertain damages to defendant's property from said change of grade, and no damages were paid therefor. Prior to said change of grade, defendant had improved his property by placing a house thereon, with reference to the grade established in said ordinance. It is admitted that the assessment is the actual cost and reasonable value of the improvement of the street, and that the assessment has never been paid.

II. There is no question but that the city had power to establish and change the grade of its streets, and to curb, gutter, and macadamize them to the established grade, and assess the costs thereof to the abutting property owners. The contention is whether the grade established by ordinance could be changed by resolution, the street improved to the new grade, and owners of abutting property, and their property, charged with the costs thereof.

The city of Keokuk exists under a special charter, and its powers are derived from that charter and the statutes. It is a familiar rule that, when a mode of exercising a power granted is prescribed, the power can only be legally exercised in that mode. In determining whether a power is conferred, charters and statutes are strictly construed; but, when the power is ascertained to be conferred, the exercise of authority within the recognized limits is favored by the courts. These principles are familiar and undisputed, and citations are unnecessary. Guided by these rules, we now turn to the special charter and statutes, to see whether a mode of establishing and changing grade is prescribed. The city of Keokuk was incorporated by chapter 3, Acts Second General Assembly, approved December 13, 1848. Section 13 of said chapter authorizes the city council to make and publish ordinances upon certain subjects, among which are "such laws and ordinances as to them shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of said city and inhabitants thereof." If nothing further appeared, we think it might be said that this section confers power to establish and to change the grade of streets, and to improve them, for the "comfort and convenience of said city and the inhabitants thereof." Clearly, if this power is to be exercised under authority of this section, it must be by law, or ordinance. To place this power beyond question, it is provided in section 22 of said act that "the city council shall have exclusive power to establish and regulate the grade of wharves, streets, and banks along the Mississippi river within the incorporated limits of said city," and by later enactment similar powers were given as to alleys. The power to establish and to change the grade of streets, and to improve them

at the expense of the property owners is an extraordinary power, the exercise of which is, as it should be, guarded by statute. It is important to property owners that the establishment of grades shall be made public, be well preserved, and accessible at all times. Turning to sections 9 and 21, of said chapter 3, it will be seen that every law or ordinance is required to be signed by the mayor, and to be published for six days, before being "of any force or validity, or in any manner binding on the inhabitants." There is no provision in the entire act, for exercising any of the powers conferred on the city council by merely passing a resolution. Resolutions are not required to be signed nor published, and we do not think that a matter of such importance to property owners as the establishment of grades, was intended to be exercised by the mere passage of resolutions. We have examined several amendments to said chapter 3, and, while we do not find it directly provided that grades must be established and changed by ordinances, there is certainly nothing authorizing it to be done by resolution. Section 1, chapter 51, Laws 1874, authorizes cities and towns, whether under general or special charters, "to provide by ordinance for the improvement of alleys by grading the same and for the assessment of the expenses thereof upon the owners of lots or parcels of land abutting on said alley." In *Keppel v. City of Keokuk*, 61 Iowa, at page 656 (17 N. W. Rep. 141), this court says: "It is well understood that the manner in which the grades of streets are established is by ordinances." Section 482, of the Code, confers power on incorporated cities and towns to make and publish ordinances "for carrying into effect or discharging the powers and duties conferred by this chapter." In *Trustees of the Diocese of Iowa v. City of Anamosa*, 76 Iowa, at page 541 (41 N. W. Rep. 314), it is said: "It cannot be claimed that the city, without the enactment

of an ordinance prescribing therefor, may establish or change the grade of its streets, or may order or cause the work of grading to be done upon the street, which results in injury to the property owner, and escape liability to him." Now, it is true that said section 1, chapter 51, relates to alleys, not to streets; and that in neither of said cases was the question under consideration directly involved, so as to make said cases controlling; but this statute shows the current of legislative thought, and with the decisions, confirms the language used in *Kepple's Case.* Appellee's counsel cite *Merchants' Union Barb Wire Co. v. Chicago, B. & Q. Ry. Co.,* 70 Iowa, 105 (28 N. W. Rep. 494), in which it was held that a city may grant permission to construct a railroad in one of its streets, by resolution or vote duly recorded, the reason given being that the statute was silent as to the mode of exercising the authority. We think this cannot be said as to chapter 3, Acts Second General Assembly. Our conclusion is that the power conferred upon the city council of the city of Keokuk, to establish and change grades, can, only, be legally exercised by the enactment and publication of ordinances.

IV. Appellee insists that the resolution does not change the grade. It expressly so declares, and the plat referred to shows a radical change.

It being conceded that plaintiff furnished the materials, did the work, and that the cost was the amount claimed, it is contended that appellee is entitled to recover. It is argued that, as the city had a right to improve the street at other than established grade, and as this improvement is beneficial to appellant, he should be required to pay therefor. The city has no right to tax abutting property for the cost of temporary improvements. The cost of such improvements is otherwise provided for, and no authority is given to assess therefor, as in

cases of permanent improvements. Whether appellant was benefited or damaged by this change of grade, is not involved in this case, as neither is ground for making this assessment. He is not chargeable in this way because of resulting benefits; and for damages caused by the change of grade, he must look to the city, and not to the appellee. The city council of the city of Keokuk, as is shown by the Revised Ordinances, correctly construed their charter as requiring that grades must be established and changed by ordinance. There is no subsequent legislation changing this mode of exercising that power, and, as appellant can only be charged as herein sought, by pursuing the mode prescribed, and, as that mode was not even substantially pursued, we conclude that the decree of the superior court must be REVERSED.