CITY OF DUBUQUE, Appellee, v. DUBUQUE ELECTRIC COMPANY, Appellant.

**FRANCHISES:** **Strict Construction.** A franchise to construct a
1   street railway and necessary side tracks, turnouts, and switches
*"on* South Dodge Street *from* Grandview Avenue" will not authorize *any* construction on Grandview Avenue, and especially will not authorize the construction of a "loop."

**WORDS AND PHRASES:** ''From.'' "From" held to exclude the
2   terminus referred to.

*Appeal from Dubuque District Court.*—J. W. KINTZINGER, Judge.

MAY 4, 1920.

ACTION in equity, asking an injunction against defendant. There was a decree entered in October, 1918, for the plaintiff, restraining defendant from operating its street cars over and upon the loop, as laid and constructed, upon Grandview Avenue, and enjoining defendant from using said loop as a part of its street car lines. There was a judgment against defendant for costs. The defendant appeals.—*Affirmed.*

*Nelson, Duffy & Nelson,* for appellant.

*M. H. Cziziek* and *M. D. Cooney,* for appellee.

PRESTON, J.—The petition was filed August 18, 1915,

and against the Union Electric Company, a corporation, organized under the laws of Iowa.   Defendant, Dubuque Electric Company, a Delaware corporation, in July, 1916, purchased and took over the street car system of the Union Electric Company.

1. FRANCHISES: strict construction.

It is alleged substantially that plaintiff is a special charter municipal corporation; that, in 1902, the Union Electric Company was granted a franchise to operate its various lines of street railway upon certain designated streets for street railway purposes; and that, according to the terms of said franchise, said company is limited to the streets therein named; that a copy of the ordinance or franchise is attached to the petition; that Grandview Avenue is a public street, open for traffic, and is not one of the streets which said company was granted any right or franchise to use; that, on November 15, 1914, defendant's predecessor, through its general manager, petitioned the mayor for the right to construct a loop at the terminus of its South Dodge and Linwood line, as an extension to said line of railway, to be constructed from the end or terminus of said line on South Dodge Street, upon Grandview Avenue, and to occupy the street between the curbs on said avenue with the necessary ties, rails, wire, and poles; that said petition was, by motion, referred to the city council's committee of the whole, which committee reported in favor of granting said petition, and which report was approved by the city council; that the Union Electric Company, acting upon such proceedings, tore up the surface of the street, laid its track, and constructed said loop as an extension of its street car line; that said loop is now being used by defendant as a part of its South Dodge Street and Linwood line; that no ordinance was ever passed by the city council, granting defendant the right to occupy Grandview Avenue with said loop, but the only action taken by the council was

the passage of the motion referred to, nor did the mayor issue a written permit to occupy said street; that no notice of the application to construct and extend its line in the form of a loop on said avenue was ever published officially in any newspaper; that the construction and operation of said loop and its appurtenances, and the extension of defendant's system over and along Grandview Avenue is unlawful, and wholly without right or authority; and that, by reason of its location, construction, and operation, it constitutes a nuisance, is a trespass, is a menace to the public, and is an unlawful interference with plaintiff's rights in and to the free and unobstructed use of Grandview Avenue; that, soon after defendant began to construct said loop, and before it was completed, plaintiff served notice upon the defendant to discontinue the construction, and remove its rails, etc., which defendant refused to do, and has ever since continued to operate its line of railway upon said street; that plaintiff has no speedy or adequate remedy at law.

Defendant makes the following admissions: It is the successor to the Union Electric Company, and acquired all the rights of said company, and assumed the obligations of said company, and its predecessor was granted a franchise, as alleged. Grandview Avenue is a public street. Permission was requested to construct a loop, and this was referred to the committee, and granted by the council. It also avers that, before the report of the committee of the whole to the council, the members of the council, in a body, went to the proposed site of the loop, and had the radius and the space pointed out to them; and that said loop is constructed partly on Grandview Avenue and partly on South Dodge Street, at the junction of said avenue and street, with a radius of about 40 feet; that it constructed the loop under the proceedings referred to; and that after laying its rails, it paved the space between the rails and a

foot on either side with brick, and set one pole for its wires used on the loop. It admits that no notice of the application of defendant to receive a franchise, or to grant to it the privilege to construct and extend its line of railway in the form of a loop on Grandview Avenue, was ever published the required number of times, as by law provided; admits that no ordinance was passed by the council, grant ing the right to occupy Grandview, Avenue with the loop, as an extension of its system, and that the only formal action taken by the council was the passage of the motion referred to; and that the mayor did not issue a written permit to occupy the street. It avers that the installation of the loop is not an extension of its railway system, and that no part of said railway is laid upon Grandview Avenue as a street railway system, and that the loop is but an enlargement of the facilities which the franchise holder employs, in exercising the power originally granted; avers that the application to the mayor was not an application for a franchise to operate upon Grandview Avenue, but that the privilege asked for and granted by the council was in the nature of a switch or turnout, to enable the company greater facilities to operate its cars under its franchise; denies that the construction and operation of the loop are unlawful; denies that it was served with notice shortly after beginning the construction of the loop; but avers that, shortly before the loop was completed, it was notified to cease its operation, which notice was not heeded; avers that it will continue to operate the loop, unless denied the right to do so; denies that plaintiff has not a speedy remedy at law; avers that defendant relied, in good faith, upon the permission granted, and expended money for labor and material, which has not been repaid; denies all allegations not admitted.

The case was tried upon an agreed statement of facts, and an amendment thereto, which follow:

"1. It is agreed that the defendant Dubuque Electric Company is the successor of the defendant Union Electric Company; has acquired all the property, rights, privileges, franchises, etc., of the said Union Electric Company in the city of Dubuque, Iowa, and has assumed the duties, obligations, and responsibilities of the defendant Union Electric Company, and is engaged in the management, operation, and control of the properties described in plaintiff's petition, with the same rights and obligations as the defendant Union Electric Company.

"2.   It is admitted that the defendant Dubuque Electric Company is limited in the operation of its railway system to the streets named in its franchises, excepting as to rights acquired by necessary implication, including such rights, if any, as were granted by the adoption of the report of the committee of the whole on March 4, 1915, referred to in the pleadings.

"It is admitted that the defendant Dubuque Electric Company has no franchise to lay its tracks or ties or rails on Grandview Avenue, as a part of its street railway system, excepting such rights as may be conveyed in the general grant to install switches, turnouts, etc., and as contained, if any, in the grant of March 4, 1915, by the adoption of the report of the committee of the whole, referred to in the pleadings, and such as were acquired by necessary implication.

"4.   It is admitted that, on or about November 15, 1914, the defendant Union Electric Company petitioned the city council of the plaintiff city for the privilege to construct, among other things, a loop at the terminus of its South Dodge Street line of the character and dimensions as shown on blue print map prepared by Eugene Anderson, Civil Engineer, on file in this case, and which is marked Exhibit D.

"5. It is admitted that, before the report of the com-

mittee of the whole, referred to in the pleadings in this case, was made to the city council of the city of Dubuque, all of the members of the city council of the city of Dubuque, while acting as a committee of the whole, and in a body, accompanied a representative of the said Union Electric Company to the proposed site of the loop, and made a personal examination on the ground of the location of said loop, had the radius of the same pointed out to them, and that said loop is constructed partly on Grandview Avenue and partly on South Dodge Street, at the junction of Grandview and South Dodge Street, of a radius of about forty (40) feet.

"6. It is admitted that the defendant Union Electric Company, acting under the authority of the city council of the city of Dubuque, granted under the adoption of the said report of the committee of the whole, went upon the premises pointed out to the members of the city council, and constructed said loop in conformity with the draft shown upon the blue print map marked Exhibit D, hereinbefore referred to, and paved the space occupied between its rails, and one foot on either side thereof, with brick, rendering the whole surface, including the rails, even with the surface of the street, and that it set but one pole to accommodate its wires for the conduct of its cars about said loop.

"7. It is admitted that the only extension granted to and accepted by the defendant Union Electric Company is as is shown on the said blue print map, marked Exhibit D.

"8. It is admitted that the rails used in the construction of said loop were manufactured under a special order, and were on the ground before the work was commenced; that the work of the installation of the loop was begun on July 15, 1915, and completed on August 25, 1915; that the city of Dubuque notified the said defendant Union Electric Company, on August 16, 1915, to discontinue the installation of said loop; that, at the time of the service of this notice, all the work on said loop had been completed, except

the laying and placing of the rails, and the filling and paving of the street, at an outlay for labor and materials of approximately the sum of eighteen hundred ($1,800) dollars."

"In compliance with the suggestion of the trial court, the agreed statements of facts hereinbefore filed is herein enlarged, or made more definite and specific:

"1. It is agreed that the ordinance which is attached to the petition, and referred to in Paragraph 2 of the original stipulation, is substantially the franchise of the company.

"Paragraph 5 of the stipulation is made more specific in the following particular, to wit:

"The report of the committee of the whole of the city council of the city of Dubuque, referred to in said Paragraph 5, is as follows:

" 'Your committee of the whole, to whom was referred the petition of the Union Electric Company, asking permission to construct a "Y" at the end of the Linwood line on Davis Avenue, and a loop at the end of the Dodge Street line, would respectfully recommend that the prayer of the petition be granted, and that the space occupied by the track and one foot outside the rails be paved with brick.

" 'William Singrin, Chairman.

" 'On motion of Alderman Singrin, the various reports of the committee of the whole were adopted.'

"The extension referred to in Paragraph 7 of the stipulation, if there be any extension, was created by the adoption, upon motion of Alderman Singrin, as above shown, by the city council of the city of Dubuque, of the report of the committee of the whole of said city, hereinabove set out. The plat referred to in the stipulation of facts, as now amended, shows the distance between the rails and the curbs on the east and west side of Grandview Avenue."

It would be difficult to give a good idea of the situation

by any description, hence the blue print plat, Exhibit D, is here set out:

MAP
SHOWING UNION ELECTRIC CO'S
STREET   RAILWAY   LOOP
AT
INTERSECTION SO. DODGE ST. AND
GRANDVIEW AVE., DUBUQUE, IOWA.

The request for permission to construct the loop is as follows:

"To the Honorable the Mayor,

"Dubuque, Iowa.

"Dear Sir:

"Permission is hereby requested to construct a loop at the end of the Dodge Street line and a 'Y' at the end of the Linwood line on Davis Avenue. This is to permit the operation of single end cars, that we can equip with air brakes, and it will facilitate the movement of cars on this division and, we hope, enable us to work out a plan that will result in the restoration of ten minute service. We request permission to do the above under direction and subject to approval of the city engineer.

"Yours respectfully,
"Union Electric Co.,
"E. M. Walker, G. M."

This request seems not to have been acted upon until March, 1915, when the council adopted the report of the committee. The original franchise or ordinance, under which the defendant claims a right to use Grandview Avenue, contains, among other things, the following:

"Sec. 1. That there is hereby granted to the Union Electric Co., a corporation organized under the laws of Iowa, its successors and assigns, the right and authority to maintain and operate, upon and along the streets of the city of Dubuque, all the lines of street railway, as at present constructed thereon and operated by the said Union Electric Co., under franchises and ordinances heretofore granted by the city of Dubuque to the Dubuque Street Railway Co., to William L. Allen and Thos. O. Sweeney, to David H. Ogden, and their successors and assigns, and to said Union Electric Co., upon the conditions and under the restrictions set forth in this ordinance, for the period of twenty-five

years from the adoption hereof, and its acceptance by the company.

"The lines of street railway so constructed and operated and hereby authorized to be operated and maintained being more particularly described and located as follows: [Here the ordinance names various streets other than those in controversy, upon which street cars may be operated] ; and a line of single track railway on South Dodge Street from Grandview Avenue to Dodge Street, thence on Dodge Street to South Locust Street.

"Sec. 3. For the purpose of constructing, maintaining, and operating said street railway lines, said Union Electric Co., its successors and assigns, shall have the right and authority to go upon said streets and parts of streets and make such excavations therein as may be necessary for the construction, completion, operation, and maintenance of said lines,   *   *   *   and to construct all necessary side tracks, turnouts, and switches, and to erect, construct, and maintain such overhead wires and poles,   *   *   *   provided that, before commencing any such construction or repairs, said Union Electric Co., its successors and assigns, shall, in writing, apply to the mayor of the city, stating the nature of such work, the time and place where the same is proposed to be done, and thereupon said mayor shall, if satisfied that such work may properly be proceeded with, issue a• written permit, authorizing said Union Electric Co., its successors and assigns, to begin and complete such work."

The other additional action of the council is that under the petition to the mayor, of November 15th, as set out in Paragraphs 4, 5, and 6, of the agreed statement of facts, and Paragraph 1 of the amended statement. It is conceded that a part of the loop in question is in Grandview Avenue, and Grandview Avenue is not one of the streets named in the original franchise or ordinance. The franchise ordinance does not merely describe the various lines of railway

and the streets over which they are to be operated, but, by Section 1, before set out, limits the company, in its operation of its system, to those lines and those streets upon which the tracks were then laid.

As we understand it, the Dodge Street line ended where South Dodge Street intersects, but does not cross, Grandview Avenue, and that was its condition at the time the franchise was granted, and also at the time the company asked permission to construct the loop upon Grandview Avenue.

1. It is plaintiff's contention that all grants or franchises for the use of streets must be strictly construed, and, in case of doubt, the grant must be resolved against the grantee; and second, that no grant or franchise to use the city streets by a public service corporation can be given, without following the provisions of the statute with reference thereto. It summarizes its position in this way: That the franchise of the company defines its rights and privileges in the city streets; that the company acquired no rights in Grandview Avenue by the action of the city council in November, 1914, and such action was wholly void, and covered no rights, because it ignored express statutory provisions; that appellant is charged with knowledge of the limitation upon the city's powers, and equity will afford it no relief; that, the action being invalid, there can be no estoppel; that said loop is a nuisance, because it obstructs the free use of the street. Appellee contends, and supports the proposition by citation of authorities, that one who asserts private rights in public property, under grants of this character, must come prepared to show that they have been conferred in plain terms, for nothing passes by the grant, except it be clearly stated or necessarily implied; and that it is a matter of common knowledge that grants of this character are usually prepared by those interested in them, and submitted to legislative bodies, with a view of obtaining the

most liberal grant of privileges which they are willing to give; that this is one among many reasons why they are to be strictly construed. *Blair v. City of Chicago,* 201 U. S. 400 (50 L. Ed. 801) ; *State v. Des Moines City R. Co.,* 159 Iowa 259; Cooley on Constitutional Limitations (7th Ed.) 565. Appellant concedes the foregoing to be the rule, but contends that the original ordinance or franchise, granting rights to it upon Dodge Street, includes, by necessary implication, the right to construct a loop extending from the end of Dodge Street onto and over Grandview Avenue. We understand it to claim under the original franchise and not under the action of the city council, in 1915, for they say in argument:

"This grant did not constitute a new franchise, or did not enlarge the franchise under which the street car company was operating, but was a grant warranted under the terms of the old franchise, and is not a license that the city may revoke at its pleasure."

We assume that they claim under both, in the sense that they claim the right under the original franchise by necessary implication and permission granted by the last action of the council, under the provision relating thereto in the original franchise. This might be so, if the original franchise granted the right to occupy Grandview Avenue, and it may be so if the right is necessarily implied therein. Whether the right is so implied, depends upon the construction of the ordinance or franchise, and the intent of the council, as gathered from the ordinance, and what was in the contemplation of the parties. The franchise does not, in express terms, grant the right to construct a loop. It does give the right to construct necessary side tracks, turnouts, and switches. It is thought by appellant that these terms cover and are equivalent to the word "loop." The word "loop" could have been used in the ordinance, had it been within the intention of the parties. We know, without

evidence, what side tracks, turnouts, and switches are, and that they occupy less space in a street, and would constitute less obstruction than a loop. The loop in question, according to the blue print, comes to within 8 feet and a few inches of the curb on either side. This would form an obstruction, to some extent at least, and more than a switch, side track, or turnout, for automobiles or other vehicles standing near the sidewalk, and the passage of vehicles along the street. The ordinance provides for the construction of its railway *on* South Dodge Street, *from* Grandview Avenue. It also provides that defendant shall have the right and authority to go upon said streets and parts of streets (that is, those named in the ordinance), to construct all necessary side tracks, turnouts, and switches. Construing the words "on" and "from," as used in the ordinance, does it give the company the right to go upon Grandview Avenue, or is it limited to the use of the other street?

It has been held that, by the general rule, "from" an object excludes the terminus referred to; but the rule seems not to be universal. The meaning is to be determined by a fair and reasonable construction of the whole instrument, regard being had to the true intent of the parties, as expressed therein. 20 Cyc. 850.; 5 Cyc. 869.; 9 Corpus Juris 153; *State v. Bushey,* 84 Me. 459 (24 Atl. 940); *Wells v. Jackson Iron Mfg. Co.,* 48 N. H. 491; *Jackson v. Reeves,* 3 Caines (N. Y.) 293. Appellant contends that the words "from," "to," and "at," are to be taken inclusively, according to the subject-matter, and that authority given by a charter or grant to construct and operate a railroad from one place to another confers authority to commence the road at some point within the first place, and end it at some point within the second. They cite *Union Pacific R. Co. v. Hall,* 91 U. S. 343; *Smith v. Helmer,* 7 Barb. (N. Y.) 416; *Tennessee & A. R. Co. v. Adams,* 40 Tenn. 596; *Pitts-*

2. WORDS AND PHRASES: "from."

*bury v. Cluley,* 74 Pa. St. 259; *Commonwealth v. Erie &
N. E. R. Co.,* 27 Pa. St. 339 (67 Am. Dec. 471); *McCartney
v. Chicago & E. R. Co.,* 112 Ill. 611; *Houghton County St.
R. Co. v. Common Council,* 135 Mich. 614 (98 N. W. 393);
*Chicago & N. W. R. Co. v. Chicago & E. R. Co.,* 112 Ill. 589.
But these are cases, for the most part, if not entirely, where
a railroad is built from one city to another.   Appellant
quotes from *Chicago & N. W. R. Co. v. Chicago & E. R. Co.,*
112 Ill. 589, supra, where the legislature granted the right
to locate a railroad "from the city of Chicago to any point
in the town of Evanston."   It will be noted that the grant
provided that it could be to any point in the town.   Under
this, it could hardly be properly contended that it was ex-
clusive.   Interpreting this clause, the court said:

"We think a legislative grant to build and operate a
railway from Chicago to another given point, without any
express or implied restrictions, would authorize the gran-
tee, so far as the state is concerned, to locate its tracks and
fix its terminus at any point in the city."

This seems to hold that it is so, so far as the state is
concerned, rather than the city.   In *McCartney v. Chicago &
E. R. Co.,* 112 Ill. 611, 626, a case involving the same grant
and the same phrase, the court said:

"The words 'from' and 'to' a place have frequently, in
the charter of a company, been construed to mean from and
to a point within the place from and to which the cor-
poration was authorized to construct its road, and especially
where there is found in the body of the act anything indi-
cating that intention.   *Moses v. Railroad Co.,* 21 Ill. 516;
*Farmers' Turnpike Co. v. Coventry,* 10 J. R. 389; *Mohawk
Bridge Co. v. Railroad Company,* 6 Paige 554; *Mason v.
Railroad Company,* 35 Barb. 373; *Western Pennsylvania
Railroad Co.'s Appeal,* 99 Pa. St. 155.   This is the reason-
able interpretation which, we think, should be adopted in
this case, as required by the public object of the grant, in

the **accommodation** of the public with railroad facilities."

In the case last cited, such interpretation was based, in part at least, upon the public object of the grant, in the accommodation of the public with railroad facilities.   This, we assume, is because a railroad coming to a large city, or any city, should, for the convenience of the public, be not required to build its terminals or station outside the city limits.   We think that rule and the reason for the rule would not apply in the instant case, where the city itself, under a franchise, grants the right, and limits it to particular streets.   As said, there is nothing in any part of the ordinance giving defendant the right to go on Grandview Avenue.   We are of opinion that the company is limited to the use of South Dodge Street, from the exterior line of Grandview Avenue, and that, considering the terms of the franchise, and the fact that the company is limited to the use of certain streets named, that a loop is not mentioned therein, the nature of the loop, the greater obstruction and burden upon the street, and all the circumstances, it was not the intention, and was not within the contemplation of the parties, that the company might use Grandview Avenue for a loop.   And we think the right is not one of necessary implication.   True, it might be more convenient for the defendant to have a loop than a switch, side track, or turn-out.

2. We think the discussion so far decides the case, and we shall refer only briefly to the other points suggested. One of these is that, while the council recommended that the prayer of the petition of November 15th should be granted, and the council, by motion, adopted the report, permission was not obtained of the mayor in writing, according to the original franchise.   It is contended at this point by appellee that the council could not grant a franchise of this character by a motion; that Section 767 of the Code, and Section 955, Code Supplement, 1913, give cities

under special charter the right to grant rights to construct railroads upon their streets; and that Code Section 766 is made applicable to cities acting under special charter by Section 958, Code Supplement, 1913; and that, therefore, the powers granted in both sections would necessarily come within Chapter 14, Title V, of the Code.   They contend, also, that the case of *Merchants' Union Barb Wire Co. v. Chicago, B. & Q. R. Co.,* 70 Iowa 105, holding that, under the facts of that case, a city may grant the right of way on its streets to a railroad company, under Section 464 of the Code of 1873, by resolution, without an ordinance, is distinguished in *Cascaden v. City of Waterloo,* 106 Iowa 673, and *McManus v. Hornaday,* 99 Iowa 507; and, as pointed out in the last two cases, the *Merchants' Union Barb Wire* case did not discuss the proposition of a section like Code Section 947.   In the last-named case, there was an ordinance granting the right of way to a part of the street, and thereafter, a resolution permitting the use of the other side. Appellee contends, and cites *Thurston v. Huston,* 123 Iowa 157, 163, *State v. Des Moines City R. Co.,* 135 Iowa 694, *State v. Des Moines City R. Co.,* 159 Iowa 259, and other cases, to the proposition, that, since the statute provides the method to be pursued for the granting of a franchise, its provisions must be followed.   They cite the case of *State v. Des Moines City R. Co.,* supra, at page 284, as holding that a company or corporation may operate a street railway upon the streets of a city, under an ordinance or resolution permitting it to do so, without express legislative authority; but that such operation and occupancy would be nothing more than a mere license, terminable at pleasure, and the tracks, etc., would, at all times, be subject to removal as a nuisance, by any citizen especially injured, or by the city or state itself.   It is further contended by appellee that, if the last proceedings of the council, by motion, could be considered as an ordinance, still there was never any publica-

tion of notice, as provided by Section 955 of the Code; but, as said, we shall not further consider these propositions, because the first is decisive, and furthermore, as before stated, we do not understand appellant to claim any right under the last action of the council alone.

We are of opinion that the case was rightly decided, and the judgment of the district court is, therefore,—*Affirmed.*

WEAVER, C. J., EVANS AND SALINGER, JJ., concur.