# IN THE SUPREME COURT OF IOWA

No. 14–0339

Filed February 27, 2015

**GHOST PLAYER, L.L.C.** and **CH INVESTORS, L.L.C.,**

Appellants,

vs.

**STATE OF IOWA,**

Appellee.

Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson, Judge.

Claimants of tax credits appeal a district court ruling dismissing their claim for tax credits because the claimants failed to exhaust their administrative remedies. **AFFIRMED.**

J. Campbell Helton and Van T. Everett of Whitfield & Eddy, P.L.C., Des Moines, for appellant Ghost Player, L.L.C.

Richard O. McConville of Coppola, McConville, Coppola, Carroll, Hockenberg & Scalise, P.C., West Des Moines, for appellant CH Investors, L.L.C.

Jeffrey S. Thompson, Solicitor Attorney General, and Adam P. Humes, Assistant Attorney General, for appellee.

**WIGGINS, Justice.**

Claimants of tax credits under Iowa Code sections 15.391–.393 (2009) brought an action in district court to collect certain tax credits it contended the State owed the claimants. The district court dismissed the claimants' petition on the grounds it did not have the authority to hear the case because the claimants failed to exhaust their administrative remedies. We agree with the district court decision dismissing the petition because the actions taken by the agency in denying the credits was other agency action, requiring the claimants to exhaust their administrative remedies. Failure to exhaust those administrative remedies deprives the district court of the authority to hear the case. We further conclude the district court was correct in finding the process used by the agency in processing the claimants' claim for tax credits did not offend Due Process Clauses of the Iowa or United States Constitutions. Accordingly, we affirm the decision of the district court.

## I. Background Facts and Proceedings.

On January 8, 2009, the Iowa Department of Economic Development (IDED) and Ghost Player, L.L.C. executed a contract for tax credits under the Film, Television, and Video Project Promotion Program. *See* Iowa Code § 15.391. CH Investors, L.L.C. is a third-party beneficiary to the contract.[1] The contract included a "description of the project to be completed[,] . . . the terms and conditions for receipt of the tax credits[,] . . . and the repayment requirements or other penalties imposed in the event the [film producers failed to] fulfill its obligations" under the contract; all of these terms were required by Iowa Administrative Code

---

[1]For the sake of brevity we will refer to both parties as "Ghost Player."

261—36.5(2) (2008). The contract included a clause stating, "Any IDED determinations with respect to compliance with the provisions of this Contract and the Funding Agreements shall be deemed to be final determinations pursuant to Section 17A of the Code of Iowa (2005)."

Under the contract, Ghost Player believed it would receive certain tax credits for the project *Field of Dreams Ghost Player*, a documentary film they produced highlighting the lives of the men who portrayed the ghost baseball players in the movie *Field of Dreams* filmed in Dyersville.[2] After completing the film, Ghost Player submitted its request for the film tax credits and supporting materials.

On December 20, 2010, the IDED declined to issue the contracted twenty-five percent tax credit for some of the expenditures and investments of Ghost Player. Ghost Player objected to the agency's decision and submitted additional information for the IDED's consideration. The IDED reviewed the materials and on June 29, 2011, revised its tax credit determination, but still did not provide a tax credit for all of Ghost Player's expenditures and investments. Ghost Player submitted further information after the IDED's second determination in an attempt to gain further tax credits. The IDED did not change its position after receiving this information and issued its final determination on the film tax credits the agency would issue to Ghost Player on February 22, 2012.

After receiving the final determination and believing the IDED had breached the parties' contract by failing to issue tax credits for all of Ghost Player's qualified expenditures, Ghost Player filed a breach of contract action in district court on November 6, 2013. The State filed a

---

[2]Upon release, the project was titled *Ghost Player: Relive the Magic.*

motion to dismiss, arguing the district court lacked authority to hear the claim because Ghost Player was first required to seek relief under the Iowa Administrative Procedure Act.

This district court granted the motion to dismiss. It held the action complained of by Ghost Player falls squarely within the definition of "other agency action," and Ghost Player would have a full and fair opportunity to raise the necessary issue and present evidence through a section 17A.19(7) hearing. *See* Iowa Code § 17A.19(7) (explaining the process for judicial review of an agency decision). Ghost Player appeals.

## II. Issue.

The first issue we must decide is whether the district court correctly decided it did not have the authority to hear the case because Ghost Player failed to exhaust its remedies under the chapter 17A, the Iowa Administrative Procedure Act.

Because we decide this issue adverse to Ghost Player, we must also deal with Ghost Player's constitutional issues raised on appeal. The only issue Ghost Player raised in the district court was that the failure of the IDED to have administrative rules in place deprived it of due process. Thus on appeal, while Ghost Player raised other challenges, we will only decide the due process issue.

## III. Scope of Review.

The State moved to dismiss Ghost Player's petition on the grounds Ghost Player did not exhaust its administrative remedies. When a party fails to exhaust all of its required administrative remedies, the court has no authority to hear the case, and if a party properly raises the challenge, the court must dismiss the case. *Keokuk County v. H.B.*, 593 N.W.2d 118, 123 (Iowa 1999). We review the authority of the district court to hear a case for correction of errors at law. *Reg'l Ret. Living, Inc.*

*v. Bd. of Review*, 611 N.W.2d 779, 781 (Iowa 2000) (per curiam). We review Ghost Player's constitutional claim de novo. *Hensler v. City of Davenport*, 790 N.W.2d 569, 578 (Iowa 2010).

**IV.  Whether the District Court Had the Authority to Hear This Case in Light of the State's Claim that Ghost Player Should Have Exhausted Its Administrative Remedies.**

Iowa began the Film, Television, and Video Project Promotion Program in 2007. *See* 2007 Iowa Acts ch. 162 §§ 1–13 (codified at Iowa Code §§ 15.391–.393).[3]  The program offered two transferable tax credits, a qualified expenditure tax credit and an investment tax credit. *Id.* § 15.393(2)(*a*)(1)–(3), (*b*)(1)–(2).

To obtain a tax credit, the taxpayer must register the project with the IDED. *See id.* § 15.393(1). The Code sets up minimal criteria for registration and allows the IDED to establish other criteria by rule. *See id.* After a project is registered, the taxpayer may qualify for credits if the expenditures and investments meet the conditions set forth in the Code. *Id.* § 15.393(2), (4).

To administer the program, the IDED passed a rule requiring a taxpayer to enter into a contract with the IDED setting forth the terms and conditions under which the tax credit would be issued. Iowa Admin. Code r. 261—36.5. The Code gave the IDED the obligation to verify the eligibility of the credit, and if verified issue the credit. Iowa Code § 15.393(2)(*a*)(3), (*b*)(2).

Consistent with the IDED's obligation to verify and issue the tax credit, the contract entered into between Ghost Players and the IDED stated:

---

[3]The legislature repealed the Film Program in 2012. *See* 2012 Iowa Acts ch. 1136, § 38.

<u>Final Authority</u>.  The IDED shall have the authority to reasonably assess whether the Recipient has complied with the terms of this Contract.  Any IDED determinations with respect to compliance with the provisions of this Contract and the Funding Agreements shall be deemed to be final determinations pursuant to Section 17A of the Code of Iowa (2005).

The IDED did not promulgate any rules dealing with the procedures for claiming a credit, for the IDED to verify a credit, or for a party to contest a decision concerning a credit within the agency.

Chapter 17A of the Code classifies three types of agency action. They are rulemaking, contested cases, or other agency action.  *Sindlinger v. Iowa State Bd. of Regents*, 503 N.W.2d 387, 389 (Iowa 1993).  Neither party contends the IDED's refusal to honor all the tax credits claimed involves rulemaking.  Both the Code and this court have defined a contested case proceeding as one "in which the legal rights, duties or privileges of a party are required by Constitution or statute to be determined by an agency after an opportunity for an evidentiary hearing."  Iowa Code § 17A.2(5); *accord Smith v. Iowa Bd. of Med. Exam'rs*, 729 N.W.2d 822, 826 (Iowa 2007).  There is no claim in this appeal the IDED actions were a contested case proceeding.

The dispute in this appeal is whether the IDED's refusal to honor all the tax credits Ghost Player claimed is other agency action.  Other agency action is action taken by an agency that is "neither rulemaking nor a contested case."  *Smith*, 729 N.W.2d at 826.  In other words, "agency action taken without a hearing required by a statute or constitution or action taken after a required hearing that does not rise to the level of an evidentiary hearing is other agency action."  *Id.*

We begin our analysis with a brief review of our prior cases applying the definition of other agency action.  In an early case, we

decided whether a professor's claim for payment of unused and accumulated sick leave, and another faculty member's claim that the Iowa State Board of Regents (Regents) violated the collective bargaining agreement by refusing to arbitrate tenure rights was other agency action requiring the claimants to exhaust their administrative remedies prior to bringing an action in district court. *Allegre v. Iowa State Bd. of Regents*, 319 N.W.2d 206, 207 (Iowa 1982). There we held the legislature, by statute, intended the board to first pass on the payment of unused or accumulated sick leave. *Id.* at 208. Therefore, the Regents must first pass on the issue and the claimants were required to exhaust their administrative remedies prior to bringing an action in district court. *Id.* As to the collective bargaining issue, we held the employee also had to exhaust his administrative remedies before going to district court because the legislature, by statute, recognized the Regents' right to carry out the responsibilities regarding collective bargaining. *Id.* at 209.[4]

In a 1986 opinion, we held a contract dispute between an outside contractor and the Regents concerning overage charges on the construction of a basketball arena was not other agency action. *Jones v. Iowa State Bd. of Regents*, 385 N.W.2d 240, 240, 242 (Iowa 1986). We distinguished *Jones* from *Allegre* because *Jones* did not involve an intrafamily dispute with an ongoing relationship. *Id.* It is also interesting to note that neither party cited any legislative procedure requiring the Regents to pass on overage charges as part of its statutory duty or expertise.

---

[4]In a later case, we disapproved of any suggestion made in *Allegre* that any action or inaction by an agency is reviewable only under the procedures of chapter 17A. *Papadakis v. Iowa State Univ. of Sci. & Tech.*, 574 N.W.2d 258, 260 (Iowa 1997).

In 1987, we decided a University of Iowa employee's claim under the Iowa Civil Rights Act could proceed to district court without first exhausting her administrative remedies by presenting the claim to the Regents. *Jew v. Univ. of Iowa*, 398 N.W.2d 861, 865 (Iowa 1987). In reaching this conclusion, we agreed with the employee that the civil rights claim bore little relation to the Regents' statutory mandate or supposed area of expertise. *Id.* at 864–65. We also emphasized the legislature devised a separate statutory procedure designed to process civil rights claims in the Code. *Id.* at 865. Notably, both parties agreed the employee needed to exhaust her administrative remedies by presenting her breach of contract claims to the Regents' before filing in district court. *Id.* at 863.

For the same reasons we articulated in *Jew*, we held a university professor must exhaust his administrative remedies by presenting his breach-of-contract claim to the Regents before filing with the district court. *Genetzky v. Iowa State Univ.*, 480 N.W.2d 858, 861 (Iowa 1992). However, in 1997, we allowed a university employee to bring a claim for failure to pay long-term disability without first presenting it to the Regents. *Hornby v. State*, 559 N.W.2d 23, 25 (Iowa 1997). As in *Jew*, we decided this case on the basis that the legislature devised a separate statutory procedure designed to process wage claims. *Id.* We held the employee's claim was a wage claim and the employee was not required to exhaust her administrative remedies by presenting her wage claim to the Regents prior to filing in district court under the wage payment collection statues. *Id.* at 25–26.

Finally, in the most recent case on this issue, we held a university faculty member must exhaust his administrative remedies by presenting his employment contract dispute to the Regents, prior to filing with the

district court. *Papadakis v. Iowa State Univ. of Sci. & Tech.*, 574 N.W.2d 258, 260 (Iowa 1997). In reaching this conclusion, we held if the action or inaction of the agency in question bears a discernible relationship to the statutory mandate of the agency as evidenced by express or implied statutory authorization, a party must first present the claim to the agency for other agency action before the party can proceed to district court. *Id.* Here, we replaced the intrafamily test applied in *Jones* with the discernable relationship test.

Applying our caselaw to the present appeal, we find the review of the tax credits by the IDED is other agency action requiring Ghost Players to seek judicial review under chapter 17A of the Iowa Code. The legislature mandated the IDED to verify the eligibility of the credit and if verified issue the credit. Iowa Code § 15.393(2)(*a*)(3), (*b*)(2).[5] The language of the contract reinforced this mandate. The mandate of sections 15.393(2)(*a*)(3) and (*b*)(2) squarely fall within the definition and test as to whether an agency's action or inaction qualifies as other agency action. The duty to verify and issue the credits bears a discernible relationship to the statutory mandate of the IDED as evidenced by the express statutory authorization. Additionally, the legislature has not devised a separate remedial statutory scheme to process a claim for film tax credits.

Accordingly, the district court did not have the authority to hear this case because Ghost Player failed to exhaust its administrative

---

[5]At the time, the Code provided, "After verifying the eligibility for a tax credit under this paragraph '*a*', the department of economic development shall issue a film, television, and video project promotion program tax credit certificate to be attached to the person's tax return." Iowa Code § 15.393(2)(*a*)(3). "After verifying the eligibility for a tax credit under this paragraph '*b*', the department of economic development shall issue a film, television, and video project promotion program tax credit certificate to be attached to the person's tax return." Iowa Code § 15.393(2)(*b*)(2).gf

remedies. Thus, we affirm the district court's decision dismissing Ghost Player's petition.

**V. Whether Ghost Player Was Deprived Due Process Because the IDED Failed to Have Administrative Rules in Place.**

In the papers filed by Ghost Player in the district court, it failed to cite either the Iowa or the United States Constitution in support of its due process argument. In reaching its decision, the district court only stated,

> Next, Plaintiffs argue they will be denied due process because there are no administrative rules in place to process claims which IDED has wrongly decided. They claim they did not receive a full and fair hearing on the merits of the case.

It too, did not cite either the State or Federal Constitution.

On appeal, Ghost Player's claim concerns its procedural due process rights contained in the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and article I, section 9 of the Iowa Constitution. In its brief, Ghost Player cites cases applying the Federal Constitution or cases applying the Iowa Constitution in the same manner as the Federal Constitution. When a party makes both a state and federal constitutional argument and only argues the federal constitutional standard, we have discretion to consider a different standard under our state constitution and may apply the federal standard more stringently. *State v. Dewitt*, 811 N.W.2d 460, 467 (Iowa 2012). In this case, we decline to exercise our discretion to consider a different standard, and we will not apply the federal standard more stringently under our state constitution.

The United States Supreme Court has stated that we decide what process is due under the Constitution by balancing three competing

interests. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18, 33 (1976). These interests are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Id.* Just because another procedure may seem fairer or wiser, does not mean the procedure provided violates due process. *Bowers v. Polk Cnty. Bd. of Supervisors,* 638 N.W.2d 682, 691 (Iowa 2002).

Although not citing *Mathews,* we have previously balanced these competing interests in another case involving other agency action. *Sindlinger,* 503 N.W.2d at 389–90. There we looked at the legislative mandate to see if a contested case procedure was required. *Id.* Having determined a contested case proceeding was not required, we looked at the process provided to see how it affected the private interest and if the procedure offended the right of due process. *Id.* at 390. We concluded the informal hearing process did not offend due process. *Id.*

Applying these principles to this case, we first note the legislature did not mandate a contested hearing process to review and award tax credits. Additionally, the Code and the contract set forth the process for obtaining the tax credits. All that was required of the IDED was to review the claim and make a determination as to the amount of the credit. As the record demonstrates, if the claimant was unhappy with a determination by the IDED, the claimant could present further documentation to the IDED.

The IDED reviewed all the subsequent documentation presented and changed the award of tax credits when it deemed it was required to do so based on Ghost Player's submissions. This informal procedure did not offend the due process guaranteed under the State and Federal Constitutions because it correctly balanced the interests set forth in *Mathews.* 424 U.S. at 335, 96 S. Ct. at 903, 47 L. Ed. 2d at 33; *see also Sindlinger,* 503 N.W.2d at 389–90.

Additionally, Ghost Player argues by not having a hearing before the IDED, the judicial review process will offend due process. First, we cannot decide if the appeal process will offend due process because we are not fortunetellers who can predict what will occur in a judicial review process. We can say with certainty that when a party requests judicial review of other agency actions the district court "may hear and consider such evidence as it deems appropriate." Iowa Code § 17A.19(7). This means at the judicial review proceeding, the court should have the agency file and any testimony that will shed light on what actually occurred at the agency level. The purpose of this section is for the district court to determine what actually occurred at the agency level to facilitate a meaningful review of the agency's action. *Sindlinger,* 503 N.W.2d at 390. In any event, we need not say more about the process provided at the judicial review proceedings until such time as it has taken place.

## VI. Disposition.

We agree with the decision of the district court dismissing Ghost Player's petition on the grounds the IDED actions regarding the review and awarding the requested tax credits was other agency action and required Ghost Player to exhaust its administrative remedies prior to filing a case in district court. Consequently, the district court was

without authority to hear the case. We further conclude the district court was correct in finding the process used by the IDED in processing the claim did not offend the right of due process under the State or Federal Constitutions. Therefore, we affirm the decision of the district court.

**AFFIRMED.**