# IN THE SUPREME COURT OF IOWA

No. 17–1489

Filed August 31, 2018

**REUVEN WEIZBERG, DAVID PETER VENG-PEDERSEN, JACOB PATRICK DAGEL,**

Appellees,

vs.

**CITY OF DES MOINES, IOWA,**

Appellant,

and

**GATSO USA, INC.,**

Appellee.

---

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

Defendant city appeals district court's grant of plaintiffs' motion for summary judgment, and plaintiffs cross-appeal grant of defendant city's motion to dismiss, defendant company's motion for summary judgment, and the district court's class certification. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Michelle Mackel-Wiederanders, Assistant City Attorney, Des Moines, for appellant.

James C. Larew of Larew Law Office, Iowa City, for appellees Reuven Weizberg, David Peter Veng-Pedersen, and Jacob Patrick Dagel.

Paul D. Burns and Laura M. Hyer of Bradley & Riley, PC, Iowa City, for appellee Gatso USA, Inc.

**APPEL, Justice.**

In this companion case to *Behm v. City of Cedar Rapids*, ___ N.W.2d ___ (Iowa 2018), and *Leaf v. City of Cedar Rapids*, ___ N.W.2d ___ (Iowa 2018), decided today, we consider challenges to an automated traffic enforcement (ATE) program implemented by the City of Des Moines (the City) and its private contractor, Gatso USA, Inc. (Gatso).

The plaintiffs challenged the Des Moines ATE program on a number of grounds. The plaintiffs claimed that the ATE program violated equal protection, due process, and privileges and immunities clauses of the Iowa Constitution. The plaintiffs further argued that the ATE system was invalid because of preemption by state and local law and unlawful delegation of governmental duties. Because of the legal defects in the ATE system, the plaintiffs asserted the defendants were unjustly enriched. The plaintiffs sought class-action certification. The plaintiffs asked for declaratory and injunctive relief as well as damages.

On the City's motion to dismiss, the district court dismissed the plaintiffs' claims based upon preemption; unlawful delegation of governmental powers; equal protection, substantive due process, privileges and immunities under the Iowa Constitution; and unjust enrichment. The court refused to grant the motion to dismiss the plaintiffs' procedural due process claim. The court at the same time granted Gatso's motion for summary judgment on all of the plaintiffs' claims.

Later, the district court considered the remaining procedural due process claim in the case on cross-motions for summary judgment. The court ruled that the City's ATE system as implemented violated procedural due process. The court also resurrected the previously dismissed unjust enrichment claim and ruled the City was unjustly

enriched. The court certified a class of vehicle owners who were cited for violating the ATE ordinance, pursued an administrative challenge, but did not request the City file a municipal infraction proceeding in district court.

The City appealed and the plaintiffs cross-appealed.

For the reasons stated below, on the City's appeal, we reverse the district court's determination that the ATE system as implemented by the City violated procedural due process.

On the plaintiffs' cross-appeal, we affirm the district court's grant of the motion to dismiss on grounds of preemption. We also affirm the district court's grant of summary judgment to Gatso on the plaintiff's unjust enrichment claims.

We reverse, however, the district court's dismissal of the plaintiffs' equal protection, substantive due process, and privileges and immunities claims. We reverse the district court's holding that there is no action for damages under the Iowa Constitution.

In light of our rulings, we vacate the district court's order on unjust enrichment against the City and the district court's order on class certification.

We remand the case for further proceedings consistent with this opinion.

**I. Factual and Procedural Summary.**

**A. The ATE Ordinance.** In 2011, the City enacted an ATE ordinance (the ordinance). Des Moines, Iowa, Mun. Code § 114-243 (2015). The ordinance generally recites the power of municipalities to implement ATE systems and to hire private contractors to implement them. *Id.* § 114-243(a). The ordinance provides that although the private contractor will provide video images to the police department for

review, the police department will determine which vehicle owners are in violation of the City's traffic control ordinances and therefore who will receive a notice of violation for the offense. *Id.*

Pursuant to the ordinance, the City entered into a contract with Gatso. Under the contract, Gatso agreed to install, operate, and maintain fixed speed systems in accordance with standard installation practices at locations the City desired. Gatso agreed to perform maintenance of the ATE system, including testing the camera settings and operation. The contract further provided that Gatso prepare violation packages and forward them to the police department for review. After approval, Gatso agreed to send citations by mail to vehicle owners and agreed to establish a toll-free help desk telephone number for vehicle owners to discuss citations and make payments.

The ordinance establishes civil penalties for speeding violations. *Id.* § 114-243(c). The vehicle owner is liable for the civil penalty unless the vehicle owner shows that a stolen vehicle report was made on the vehicle encompassing the time period in question. *Id.* § 114-243(c)(3).

When a person receives a traffic citation, the ordinance establishes a procedure for disputing the citation by requesting that the City issue a municipal infraction citation and proceed to have the matter determined in district court. *Id.* § 114-243(d). Specifically, the ordinance provided,

> (d) *Penalty and appeal.*
>
> . . . .
>
>> (2) A recipient of an automated traffic citation may dispute the citation by requesting an issuance of a municipal infraction citation by the police department. Such request will result in a required court appearance by the recipient and in the scheduling of a trial before a judge or magistrate at the Polk County Courthouse. The issuance of a municipal infraction citation will cause the

> imposition of state mandated court costs to be added to the amount of the violation in the event of a guilty finding by the court.
>
> (3) If a recipient of an automated traffic citation does not pay the civil penalty by the stated due date or request a trial before a judge or magistrate, a municipal infraction citation will be issued to the recipient by certified mail from the police department. Said municipal infraction citation will result in a mandatory court appearance by the recipient as well as imposition of state mandated court costs if a finding of guilty is made by the court.

*Id.* § 114-243(d)(2)–(3).

**B. Iowa Department of Transportation Evaluation and Order.**

The utilization of ATE systems by Iowa municipalities caused the Iowa Department of Transportation (IDOT) to promulgate rules related to their use. Iowa Admin. Code ch. 761—144. Pursuant to the rules, municipalities utilizing ATE systems were required to file reports on each location with the IDOT. *Id.* r. 761—144.5(1). The IDOT then analyzed the reports to determine whether to approve the ATE systems at the locations. *Id.* r. 761—144.5(3). Further, municipalities were also required to file annual reports evaluating the effectiveness of the ATE system on improving traffic safety. *Id.* r. 761—144.7.

The IDOT's 2015 evaluation of the use of equipment by the City's ATE system at the I-235 location concluded that the City should remove the equipment. According to the evaluation, the location "experiences a low crash rate" while the number of speed citations were "extremely high." The evaluation order noted that under the IDOT's administrative rules, ATE systems "should only be considered in extremely limited situations on interstate roads because they are the safest class of any roadway in the state and they typically carry a significant amount of non-familiar motorists." *Id.* r. 761—144.4(1)(*c*).

The City appealed the evaluation. On appeal, the IDOT held that "the data does not provide convincing evidence that this location is unsafe for motorists and law enforcement conducting routine police work." The City continued the operation of the ATE equipment on I-235 and along with two other cities, filed an action challenging the authority of IDOT to promulgate the rules. In *City of Des Moines v. Iowa Department of Transportation,* we recently held that the IDOT lacked authority to promulgate its ATE rules. 911 N.W.2d 431, 434 (Iowa 2018).

**C. Plaintiffs Alleged ATE Violations.**

1. *Weizberg.* Reuven Weizberg is a resident of New York State. Weizberg is a musician who was in Des Moines for a performance. Weizberg received three notices of violation arising from events generated at the ATE system location on I-235 in May 2015.

The front page of the notices of violation received by Weizberg provided photos of the offending vehicle and license plate along with information regarding the date and time of the alleged violation. The front page declares that the motor vehicle owner is liable for payment of any penalty. The notice of violation declares that

> [f]ailure to pay the penalty or contest liability by the due date is an admission of liability and will result in this penalty being forwarded to collections and to the Iowa Income Tax Offset Program or for filing in state district court.

A due date is provided on the front page. A box is presented outlining options for payment online, by mail, or by phone. There is no mention on the front page of the citation regarding the right to request the filing of a municipal infraction.

On the back of the notices of violation the heading "TO CONTEST THIS VIOLATION" appears. Under the heading, the first sentence declares, "You have the right to contest this violation at an

administrative hearing or by mail." The notices of violation further state, "Before contesting your violation it is recommended that you review the local ordinance, images and the actual recorded video of the infraction to determine if you have a valid defense supporting dismissal of this citation." Then, the following language appears:

> Note: If the administrative hearing does not resolve the issue, a civil infraction (lawsuit) may be requested to be filed in state district court and a court hearing date will be scheduled. Additional costs including an $85.00 filing fee, and other court costs will be assessed if you are found liable or you pay the civil penalty before the court hearing date. If you fail to appear for the court hearing, you will be responsible for paying the fine and court costs. If you are found not liable, the fees will be paid by the city. Alternatively, you may request a civil infraction (lawsuit) in lieu of an administrative hearing.

Beneath the section describing how to contest violations, two boxes appear describing how to obtain an in-person administrative hearing or, in the case of nonresidents, how to contest the violation by mail. Inside the box describing how to obtain an administrative hearing, it again states, "You must request such a hearing prior to the due date specified," and "[f]ailure to appear at this hearing will result in an automatic final determination of liability."

Weizberg asked for and received administrative hearings by mail. In all cases, he received a document indicating that an administrative hearing had been held and stating, "IT IS ORDERED" that Weizberg was liable for the civil penalty and that a "JUDGMENT TOTAL" of $65 had been imposed. Further, the document declares, "Failure to pay the total amount specified . . . will result in the possible imposition of the Iowa Income Tax Offset Program, collection efforts and legal action."

The backside of the document provides payment information. In the lower portion of the page is a section entitled "RIGHT OF APPEAL."

Here, the document reads, "If you want to appeal the Hearing Officer's decision, within 10 days of the date of this ruling you may request that a civil infraction (lawsuit) be filed against you in Polk County District Court." Further, the document declares, "An $85.00 filing fee and other court costs plus the fine amount will become a judgment against you if the Court finds you liable for the violation."

On a document entitled "2nd and Final Notice" that Weizberg received for one of the events, some text on the front states,

> As you have failed to pay or contest the Notice of Violation previously issued, the fine is now due. Failure to pay the civil fine may subject you to formal collection procedures and to the Iowa Income Tax Offset Program. Failure to appear for court hearings will result in judgment being issued against you and liens registered in Polk or Warren County.

On the back of the document, other text reads,

> Please be advised that you have exhausted all challenge options and this is a debt due and owing to the City of Des Moines. Failure to pay the fine immediately will subject you to formal collection procedures and the Iowa Income Tax Offset Program.

Despite the reference to "court hearings" on the front, this second notice contains no information about any ability to challenge the fine, whether by administrative process or by municipal infraction.

Weizberg did not pay. No municipal infraction was filed.

2. *Veng-Pedersen.* Waukee resident David Veng-Pedersen received one citation in May of 2015. Like Weizberg, he received a notice of violation, requested an administrative hearing, and was found liable. He did not pay the amount.

3. *Dagel.* Jacob Patrick Dagel was not an original plaintiff to this proceeding, but the district court added him as a party when it certified the class in this case. He received a notice of violation in September

2016, requested an administrative hearing, and was found liable. Unlike Weizberg and Veng-Pedersen, he paid the amount.

### D. District Court Proceedings.

1. *Petition.* Weizberg and Veng-Pedersen filed their petition in district court on December 11, 2015. The petition named the City and Gatso as defendants.

In article I, count I of the petition, the plaintiffs sought a declaratory judgment against the City. The plaintiffs asked the court to declare that the ATE program "as implemented" by the City and Gatso violated Iowa Code section 602.6101, which provides for "exclusive, general, and original jurisdiction" in district court of all actions. The plaintiffs further claimed that the ATE program, "through its use of an administrative process," is irreconcilable with and preempted by Iowa Code section 364.22(6), which relates to the procedures for processing municipal infractions, and Iowa Code section 364.22(4), which requires police officers, and not a private entity, issue civil citations.

Article I, count I further asked the district court to declare that "the ATE program described herein" violated the equal protection clause and the privileges and immunities clause of the Iowa Constitution, article I, section 6, because it infringed upon the fundamental right to travel. Even if a fundamental right to travel was not involved, the plaintiffs claimed there was no rational basis to have the cameras where they were located. Further, the ATE program violated equal protection and privileges and immunities because it treated out-of-state residents differently than in-state residents.

The petition further sought a declaratory judgment that the ATE program "utilized by" and "as applied" violated equal protection and

privileges and immunities through the City's use of a database, Nlets,[1] which excludes certain classes of license plate numbers from the database, therefore effectively immunizing those vehicle owners from ticketing by the system. Further, the plaintiffs sought a declaration that the exclusion of government-owned vehicles from the database violated state law provisions that narrowly limit the circumstances in which government employees are exempt from prosecution under state traffic laws. Additionally, the plaintiffs requested a declaratory judgment that the use of certain technology that makes arbitrary distinctions for vehicles without rear license plates is illegal.

The petition asked for a declaration that the ATE program utilized by the City "violates the Constitution of Iowa" by violating IDOT's administrative rules and regulations and the corresponding 2015 evaluation ordering the City to remove its equipment.

The petition prayed for a declaration that the ATE program violated the due process clause of the Iowa Constitution "due to the scheme's many failures." The alleged due process failures included placement of cameras without sufficient advertising to the public, placement of cameras and radar at sites not correlated with significant public safety issues, insufficient actual notice to cited vehicle owners of all applicable defenses, and failure to direct cited vehicle owners to the district court as opposed to administrative proceedings that are neither created or described in the City's ATE ordinance and are convened by untrained hearing officers hired by and allied with the City.

---

[1]National Law Enforcement Telecommunications System (Nlets) is a law-enforcement database maintained by the International Justice and Public Safety Network. *Nlets*, https://www.nlets.org (last accessed July 25, 2018).

Finally, the plaintiffs sought a declaration that the ATE program amounted to an unlawful delegation of police power from the City to Gatso, a privately held for-profit corporation.

In article II, count I of the petition brought against the City and Gatso, the plaintiffs requested class certification.

In count II, the plaintiffs asserted an action for damages for violations of the Iowa Constitution against both the City and Gatso. With respect to Gatso, the plaintiffs alleged that it "acted under the color of law" in carrying out its responsibilities and perhaps even "help[ed] to orchestrate" the unconstitutional ATE program. The damages sought were the amount of penalties paid, plus interest as allowed by law. Plaintiffs further sought costs and attorney's fees.

In count III, the plaintiffs alleged that the City and Gatso were unjustly enriched. The plaintiffs claimed that the City and Gatso had collected millions of dollars based upon an unlawful ordinance. In particular, the plaintiffs alleged the scheme was "decisively unconstitutional" since March 17, 2015, when the IDOT determined that there was no legitimate state interest in placing the camera at the I-235 location. Plaintiffs sought to recover fines actually paid, plus interest, costs, and attorney's fees.

In count IV, the plaintiffs sought a temporary and permanent injunctive order preventing the operation of the ATE program. The plaintiffs again repeated their request for damages.

2. *City's motion to dismiss; Gatso's motion for summary judgment.* The City quickly filed a motion to dismiss the petition. Gatso also quickly sought dismissal but framed its motion as one for summary judgment.

In its resistance to Gatso's motion for summary judgment, the plaintiffs filed a number of exhibits. Included in the exhibits were two affidavits from experts. Northwestern University Professor of Transportation Engineering, Joseph Schofer, stated that based upon his review, the City's placement of a fixed camera at the location on I-235 "is neither indicated by sound transportation policy nor beneficial to the public in terms of improving highway safety."

The plaintiffs also submitted an affidavit from Carl Riechers, who identified himself as a professional "engaged with the calibration and certification of radio and avionics equipment for many years" and as a person familiar with calibration and certification best practices. As to Riechers' curriculum vitae, he simply stated that he held a bachelor of science in electrical engineering from Michigan Technological University. Riechers opined on issues related to the calibration of the City's ATE equipment. Riechers stated that he did not know what national standard Gatso used to calibrate the ATE system. Based on the documents, Riechers opined that it was impossible to determine whether the calibration considered the tilting of radar unit angles, which can result in "exaggerated speed measurement for every single vehicle moving below it." According to Riechers, "it is impossible for Gatso to claim that its fixed camera/radar units . . ., as implemented on I-235 Eastbound, are accurate." Further, Riechers asserted, "Gatso's calibration and certification protocols and documentation fail to meet the minimum threshold of those calibration and certification standards applied to radar technologies in the United States."

On July 25, 2016, the district court issued an order granting the City's motion to dismiss on all claims except the plaintiffs' claim based

on procedural due process. The court granted Gatso's motion for summary judgment on all claims against it.

With respect to the plaintiff's procedural due process claim, the district court noted that the City's ordinance did not establish an administrative procedure. The district court further found that a vehicle owner was required to go through the administrative procedure to challenge an alleged violation. The district court found that a mandatory procedure not authorized by the ATE ordinance established a procedural due process violation.

With regard to the plaintiffs' substantive due process claims, the district court granted the City's motion to dismiss. The court rejected any notion that the ATE system infringed on a right to travel under article I, section 9 of the Iowa Constitution. Applying a rational basis test, the court ruled the City had a legitimate interest in enforcing the speed limit within the city limits. Additionally, the district court noted the City had an interest in not using law enforcement officers to personally stop vehicles on the interstate system.

With respect to the equal protection and privileges and immunities claims, the district court noted it was undisputed that the ATE system captures rear license plates, uses the Nlets database, and therefore does not ticket government-owned vehicles and semi-trailer trucks. The court granted the City's motion to dismiss because it found the City could rationally conclude that a system that photographs rear license plates and uses the Nlets database provided the most cost-effective system.

The district court also dismissed claims based on preemption by other Iowa statutes and rules, specifically Iowa Code section 602.6101, relating to the exclusive jurisdiction of district court, section 364.22(4), requiring service of process for municipal infractions by specified means,

and section 364.22(6), requiring trial on municipal infractions in the same manner as small claims. The court found that the administrative process used by the City was not irreconcilable with the statute and therefore was not preempted.

The district court further noted that the plaintiffs' real claim regarding the implementation of the ATE ordinance through the use of an administrative procedure was not really one of preemption. The plaintiffs were arguing the administrative remedy was not authorized by the ATE ordinance. The court declared this claim was really a procedural due process violation. The court thus dismissed the claims based on preemption.

On undue delegation, the district court noted that officers of the Des Moines police department in fact approved every citation. While the court noted the plaintiffs' claim was that the review is cursory, the court found that was a criticism of the police department and did not give rise to an unlawful delegation claim. The court concluded that the mere mailing of notice was not an unlawful delegation of government authority. As a result, the court dismissed the plaintiffs' unlawful delegation claim.

The district court next turned to the question of remedy. The court concluded that no private damages remedy was available under the Iowa Constitution. The court further concluded there was no private remedy for violation of the IDOT decisions.

The district court then evaluated the plaintiffs' claim of unjust enrichment. The court found that neither plaintiff in this case—at the time only Weizberg and Veng-Pedersen—had paid the fine. As a result, neither plaintiff could claim unjust enrichment. The court dismissed the claim as to both the City and Gatso.

Along with the City's motion to dismiss, the district court considered Gatso's motion for summary judgment. The court granted summary judgment on all claims against it.

3. *Motion for class certification and leave to amend to add additional parties.* After the prior motions had been decided, the plaintiffs moved for class certification on their remaining procedural due process claim. They also moved to add Dagel and Jill Elizabeth Southworth as additional parties to their petition. On February 2, 2017, the district court granted the plaintiffs' motion for class certification and granted the motion to amend the petition to add Dagel but not Southworth as a party. The court declined to join Southworth as a party because she received an ATE citation from a location different from the other plaintiffs and because she simply paid the requested amount without pursuing any kind of appeal.

With respect to class certification, the district court also granted the plaintiffs' motion for class certification. The court applied the familiar rules under Iowa Rules of Civil Procedure 1.261 through 1.263. The district court found that the plaintiffs met the threshold requirements of rule 1.261 regarding numerosity and impracticability, that a class action would permit fair and equitable adjudication of the controversy, and that the representatives would fairly and adequately protect the interests of the class. The district court certified the class as any vehicle owner from December 11, 2013, and until the present who received a notice of violation "based upon a claim of speeding from one of the speed cameras mounted at the I-235 eastbound location" and "who appealed the decision, went through the administrative process, was adjudicated liable and was ordered to pay a penalty."

The City filed a rule 1.904(2) motion to modify the definition of the class. The City sought to eliminate from the class any individual who requested the issuance of a municipal infraction to be heard by the district court. The City argued that when a party actually obtained the process provided under Iowa Code section 364.22 related to municipal infractions, there was no valid claim of a violation of procedural due process. The district court granted the City's motion and revised the class accordingly.

4. *Cross motions for summary judgment on remaining procedural due process claim.* After the class was certified, the City filed a motion for summary judgment on the plaintiffs' procedural due process claim. The plaintiffs resisted and filed a cross-motion for summary judgment.

On September 5, 2017, the district court granted summary judgment in favor of the plaintiffs. The court first described the process of municipal infractions, indicating that under the City's municipal code the City could begin the process by sending a "simple notice." If the individual pays the simple notice, then the violation is admitted and no further action is needed. If the individual either chooses to contest the violation or fails to pay, in order to proceed the City must file a municipal infraction in state district court. The court then explained that the Des Moines ATE ordinance states that individuals may dispute their automated traffic citation by requesting the filing of a municipal infraction.

The court noted the City argued that plaintiffs had two options to contest the notice of violation, either an administrative hearing or a civil infraction. After an administrative hearing, the City maintained, plaintiffs could still seek a municipal infraction. The plaintiffs argued they were given only the administrative process option, and this process

was not optional. None of the forms they were given gave plaintiffs the option to check a box indicating they wished to proceed with a municipal infraction, and when calling the number on the notice of violation, Gatso employees did not provide information about a municipal infraction. The court noted the plaintiffs pointed to evidence in the record of Gatso's call-center training and staff informational materials that told employees how to instruct callers in the administrative process, and nowhere was it explained how to begin a municipal infraction. Further, the court found the City did not dispute that neither the forms nor Gatso employees provided plaintiffs a way to initiate a municipal infraction.

The district court held that the plaintiffs had a protected property interest in being free from the imposition of irrational monetary fines. All class members received a notice in the form of a notice of violation. The court explained it was unnecessary to balance the interests of the parties involved and the risk of erroneous deprivation because the administrative hearing process failed to conform to the process enacted by the city council and the municipal infraction process provided by state statute. The court stressed cities are bound by both state law and their own charters and codes. Not only does the City's failure to abide by its own ordinances render its action improper, but also failure to follow these procedures can violate due process when depriving someone of a protected liberty or property interest. *See Hancock v. City Council of Davenport*, 392 N.W.2d 472, 474 (Iowa 1986).

The district court noted that nothing prevented the City from instituting informal resolution mechanisms, but its municipal code did not provide for an administrative hearing for that purpose. The court concluded the City could not substitute the process guaranteed by its municipal code without amending the ordinance.

**E. Appeal and Cross-Appeal.** The City appealed the district court's September 5, 2017 order granting summary judgment to the plaintiffs on the procedural due process claim. The plaintiffs filed a notice of cross-appeal on all adverse rulings, including those related to the City's original motion to dismiss, Gatso's motion for summary judgment, and the district court's class certification.

We retained the case.

**II. Standard of Review.**

On a motion to dismiss, we review for corrections of errors at law, unless the motion to dismiss is on a constitutional issue, in which case our review is de novo. *Godfrey v. State*, 898 N.W.2d 844, 847 (Iowa 2017); *Hedland v. State*, 875 N.W.2d 720, 724 (Iowa 2016).

Generally, we review a district court's ruling on summary judgment for correction of errors at law. *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 253 (Iowa 2012); *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007). When the summary judgment was on a constitutional issue, however, our review is de novo. *Godfrey*, 898 N.W.2d at 847; *Varnum v. Brien*, 763 N.W.2d 862, 874 (Iowa 2009).

We review a district court's decision on class certification for abuse of discretion. *Comes v. Microsoft Corp.*, 696 N.W.2d 318, 320 (Iowa 2005).

**III. Procedural Due Process.**

**A. Arguments of the Parties.** The City sees this case as simply involving an optional, informal, and inexpensive alternate process to resolve disputes over traffic violations detected by the ATE system prior to resorting to a formal, and more expensive, district court process. According to the City, procedural due process is not violated when the City provides a supplemental and voluntary opportunity to be heard in

addition to the opportunity to go to district court where a party is afforded a panoply of procedural rights that indisputably satisfy procedural due process.

The City recognizes, as it must, that the ATE ordinance, at least until it was later amended,[2] did not specifically authorize an optional or supplemental administrative proceeding. But the City does not see the lack of explicit authorization in the ATE ordinance as having any legal significance on the question of procedural due process. The provision of additional informal processes of resolution are not unconstitutional simply because the ordinance does not spell out the additional options. *See Hughes v. City of Cedar Rapids*, 112 F. Supp. 3d 817, 846–47 (N.D. Iowa 2015), *aff'd in part, rev'd in part*, 841 F.3d 987 (8th Cir. 2016). The City rejects the notion, adopted by the district court, that a per se procedural due process violation arises when the City fails to follow the procedures outlined in a statute or ordinance.

Even if the process provided to the plaintiffs were in violation of a statute or ordinance, the City argues, one must still focus on the process afforded, in fact, and whether that process was sufficient to meet procedural due process requirements. In other words, even if the process actually provided is arguably contrary to a state statute or a municipal ordinance, that illegality does not necessarily give rise to a

---

[2]The City amended its ATE ordinance after this case was filed. The amended ATE ordinance specifically provides that the recipient of a notice of violation may dispute the violation by requesting an administrative hearing or by requesting the issuance of a municipal infraction by the police department. Des Moines, Iowa, Mun. Code § 114-243(d) (2017). Under the amended ATE ordinance, a vehicle owner has thirty days to request an administrative hearing. *Id.* A vehicle owner dissatisfied with the outcome of the administrative hearing may then request the filing of a municipal infraction within thirty days of the date of determination. *Id.* If a timely request for the issuance of a municipal infraction is made, the City may elect to issue the municipal infraction or dismiss the matter. *Id.*

*constitutional procedural due process* violation if the party, notwithstanding the legal infirmities of the process, nonetheless received proper notice and a meaningful opportunity to be heard under the familiar three-pronged test of *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976).

In applying the first prong of the *Mathews* test involving inquiry into whether the plaintiff has asserted a constitutional interest entitled to procedural due process protection, the City concedes that the imposition of a monetary sanction gives rise to a constitutionally protected property interest. But according to the City, the constitutionally protected property interest is not very weighty in light of the minimal amount involved in this case.

On the second prong of the *Mathews* test requiring evaluation of the risk of erroneous deprivation that may arise from the offered procedure, the City maintains there is no risk of erroneous deprivation because plaintiffs ultimately have full access to the municipal infraction process in the district court under Iowa Code section 364.22.

The City argues the district court erred when it found that the administrative process was not voluntary. The City did not present specific affidavits on the voluntariness question but cited instead the language in the notice of violation received by each of the plaintiffs, which stated, on the back page, "Alternatively, you may request a civil infraction (lawsuit) in lieu of an administrative hearing."

On the third *Mathews* prong regarding the nature of the government's interest, the City argues that it has a strong interest in providing an alternative avenue to resolve the dispute because it reduces costs for all involved.

In contrast, the plaintiffs argue that the district court properly held that the City's failure to follow the process in the ordinance and as required by state statute violates procedural due process under article I, section 9 of the Iowa Constitution. According to the plaintiffs, determining what process is due can first be judged by what process is required by statute. *See Ghost Player, L.L.C. v. State*, 860 N.W.2d 323, 330 (Iowa 2015). The plaintiffs assert the general assembly determined the minimal process due to those challenging municipal infractions is contained in Iowa Code section 364.22.

The plaintiffs maintain the district court correctly found that the administrative hearing process was mandatory. According to the plaintiffs, the notice of violation directed vehicle owners to call a telephone number answered by Gatso employees. The plaintiffs point out Gatso's training materials tell its employees that people can contest the notice of violation in person or by mail at an administrative hearing. Yet, the plaintiffs suggest, nowhere in Gatso's training materials are employees instructed that they can tell vehicle owners a municipal infraction process is available.

Further, according to the plaintiffs, the notice of violation itself shows that the administrative hearing is required—its check-the-box option on the back of the notice only allows the vehicle owner to select an in-person administrative hearing or a hearing by mail to contest the violation. The plaintiffs argue their experiences further support that the administrative hearing is required—a plaintiff who called Gatso was told that he had to proceed with an administrative hearing and a plaintiff who went to the website listed on the notice of violation was informed that to contest the violation he must do it through an administrative hearing.

Even if an administrative hearing is not required, the plaintiffs claim the City still violates procedural due process by not complying with its own ordinance by offering an unauthorized administrative hearing. Plaintiffs emphasize that in *Hancock*, the Iowa Supreme Court held that Davenport's failure to comply with its own ordinances in declaring a building a nuisance failed to satisfy due process requirements. 392 N.W.2d at 477–78. In the plaintiffs' view, cities may not post hoc create a process that does not exist in their ordinances. *See* Iowa Code § 364.2(1). Plaintiffs dispute the City's attempt to distinguish the cases relied on by the district court. In addition to violating its own ordinance, according to the plaintiffs, the City is violating state law.

Further, assuming the City's failure to provide the process in the ordinance did not in itself violate due process, the plaintiffs maintain due process was still violated under the familiar three-pronged balancing test of *Mathews*, 424 U.S. at 335, 96 S. Ct. at 903. Plaintiffs assert they have a property interest in not being subject to irrational monetary fines. While $65 may not seem significant to some, the plaintiffs admit, it is certainly a significant amount to others. Applying the second factor in the *Mathews* balancing test, the plaintiffs argue there is also a substantial risk of erroneous deprivation as shown by (1) the lower burden of proof, (2) a process that is less protective than a court of law, (3) flaws in the citation and notice process which direct all vehicle owners to an administrative hearing, and (4) a nonrebuttable presumption that a cited vehicle owner is liable for the infraction. The plaintiffs state that the probable value of additional or substitute procedural safeguards also weighs in favor of a due process violation—the municipal infraction process provides direct access to the district courts. According to the plaintiffs, if a vehicle owner does not pay the fine, the City does not file a

municipal infraction to obtain a judgment for the money, but proceeds to directly attempt to collect the money without a preceding judgment. Finally, the plaintiffs assert, that under the third prong of the *Mathews* test, there is no weighty government interest in not proceeding with a municipal infraction.

**B. Discussion.**

1. *Procedural due process arising out of a failure to follow ordinance or state law.* We begin our discussion of procedural due process by considering the gist of the district court's opinion, namely, that a violation of a statute or ordinance gives rise to a procedural due process violation without a further showing.[3] Many federal authorities hold that the failure of government to comply with an ordinance or state law does not "automatically translate into a deprivation of procedural due process under the United States Constitution." *Shoemaker v. City of Howell*, 795 F.3d 553, 560 (6th Cir. 2015) (quoting *DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999)); *see also Phillips v. McCollom*, 788 F.3d 650, 654 (6th Cir. 2015); *James v. Rowlands*, 606 F.3d 646, 657 (9th Cir. 2010); *Rogers v. Okin*, 738 F.2d 1, 8 (1st Cir. 1984); *Thomas v. Zaharek*, 289 F. Supp. 2d 167, 178 (D. Conn. 2003).

While these federal authorities are not binding on us in our interpretation of article I, section 9 of the Iowa Constitution, we think the reasoning in these cases is persuasive. A regulation or ordinance may well provide for procedures in excess of procedural due process

_____

[3]Although the plaintiffs emphasize that the City violated its own ordinance (before the recent amendment) by imposing an unauthorized administrative process as part of their procedural due process argument, they have not explicitly alleged a cause of action based upon violation of the underlying ordinance in effect at the time the plaintiffs received their notices of violation. We do not address whether any or all of the plaintiffs should be allowed to amend the complaint to allege violation of the former ordinance or whether such claims are moot in light of the amendment of the ordinance. We leave these matters to the district court on remand.

requirements. The failure to follow such a procedure or ordinance cannot give rise, in and of itself, to a due process violation. Of course, the failure to comply with a regulatory or statutory procedure may provide us with guidance on whether a procedural due process problem is present, but in all cases, the focus of the analysis must be on the critical question of whether the process that was provided comported with the basic requirements of notice and an opportunity to be heard.

We do not find the precedents cited by the plaintiffs and the district court supportive of the plaintiffs' position. Some of the cases simply stand for the proposition that a duly enacted municipal ordinance cannot be amended by a mere resolution. *See Cascaden v. City of Waterloo*, 106 Iowa 673, 682, 77 N.W. 333, 336 (1898); *McManus v. Hornaday*, 99 Iowa 507, 511–12, 68 N.W. 812, 813–14, 814 (1896); *Ryce v. City of Osage*, 88 Iowa 558, 561–62, 55 N.W. 532, 533 (1893). Other cases simply indicate that a statutory procedure was not followed and, independently, a due process violation occurred. *See Blanchard v. City of Ralston*, 559 N.W.2d 735, 739–40 (Neb. 1997).

Nothing in *Ghost Player*, 860 N.W.2d 323, is to the contrary. In *Ghost Player*, we looked to the legislative mandate to determine if a contested case was required. *Id.* at 330. As a matter of determining what procedure is required *by statute*, this makes sense. But the brief passage in *Ghost Player* does not stand for the proposition that the scope of procedural due process rights under the Iowa Constitution is identical to or controlled by the procedures established by the legislature. Instead, the constitutional test for determining whether a process provided by the government purports with procedural due process is provided in *Mathews*, 424 U.S. at 335, 96 S. Ct. at 903. Under *Mathews*, due process is evaluated by considering the nature of the private

interests involved, the risk of erroneous deprivation, and the nature of the government's interests. *Id.* We now turn to apply the *Mathews* test.

Under the ordinance itself, there is little doubt that the *Mathews* test is satisfied. Under the ordinance, a vehicle owner who receives a traffic citation may simply request the City file a municipal infraction under Iowa Code section 364.22. Under Iowa Code section 364.22, the plaintiffs are afforded a full panoply of procedural rights that clearly satisfy the *Mathews* test.[4]

2. *Procedural due process challenge arising out of Gatso hotline.* The plaintiffs also claim that the City was not entitled to summary judgment on procedural due process grounds because of Gatso's conduct in the operation of its hotline that is available for cited vehicle owners. According to the plaintiffs, employees staffing the hotline have been provided instructions that allow vehicle owners to disclaim liability by claiming a "sale, lease, or rental" of the registered vehicle. Plaintiffs claim to have called the hotline but were not affirmatively told that a sale, lease, or rental agreement might provide an avenue to escape liability for the civil penalty. Plaintiffs claim that by failing to affirmatively provide this information through the hotline, the City and Gatso violate the notice requirement, let alone the adequate hearing prong, of due process.[5]

---

[4]The ATE ordinance as amended also appears to satisfy due process. Under the ATE ordinance as amended, the administrative hearing is optional and a vehicle owner may choose to make the City prove its case in a small claims action. *See* Des Moines, Iowa, Mun. Code § 114-243(d) (2017). The ATE ordinance as applied will pass procedural due process muster if the notices the City sends to vehicle owners fairly and accurately state, as suggested in the City's brief, that the administrative hearing is optional, that it is a method of informal settlement, and that no enforceable obligation will arise unless the City files a municipal infraction in small claims court and obtains a judgment.

[5]Due process involves two separate components: adequate notice under *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652 (1950), and a legally

However, there is no procedural due process obligation on the part of Gatso or the City to affirmatively volunteer circumstances under which a vehicle owner may seek to avoid responsibility under the City's ATE ordinance. The notice of violation provides the time, place, and alleged speed of the vehicle in question in a case involving a small civil penalty. An alleged violator does not need a notice that he might seek to avoid being considered a "vehicle owner" under the ATE ordinance by showing a sale, rental, or lease agreement. Such potential defenses or arguments, while not necessarily meritorious, would be obvious to any vehicle owner cited under the ATE ordinance. There is no due process requirement that the City or its agent Gatso affirmatively state to all who call the hotline, regardless of their circumstances, that liability might be avoided by asserting sale, lease, or rental arrangements.

3. *Due process based on irrebuttable presumption.* The plaintiffs also claim that the ordinance violates procedural due process because it gives rise to an irrebuttable presumption that the vehicle owner was, in fact, the driver of the vehicle. The argument raises an issue of substantive due process, not procedural due process. *See City of Sioux City v. Jacobsma*, 862 N.W.2d 335, 345–46 (Iowa 2015) (discussing but not deciding the question of whether an ATE ordinance that imposes liability on vehicle owners gives rise to an irrebuttable presumption that

_____

sufficient process under *Mathews*, 424 U.S. 319, 96 S. Ct. 893. Except for the notice claim related to the operation of the hotline, the plaintiffs' rely upon a *Mathews* due process argument. Under the ordinance, however, the plaintiffs have always been entitled to a de novo hearing in a small claims action, thus providing a constitutionally satisfactory process. Nothing in this opinion, however, should be construed as approval of representations made in various notices that were utilized in this case declaring, for instance, that the unauthorized administrative law process yielded "JUDGMENT[S]" that could be referred to collection agencies if the vehicle owner did not make prompt payment. Misleading notices in ATE systems have been disapproved of in at least one case. *See City of Moline Acres v. Brennan*, 470 S.W.3d 367, 381 (Mo. 2015) (en banc).

an owner was driving in violation of substantive due process). While the district court dismissed the plaintiffs' substantive due process claim, it did not directly address the claim that the Des Moines ordinance violated substantive due process because it created an irrebuttable presumption that the vehicle owner was driving the car.

In *Jacobsma*, we held that because the plaintiff at trial conceded he was the registered owner of the vehicle, conceded the vehicle was involved in the infraction, and offered no evidence that he was not driving the vehicle when the infraction occurred, the plaintiff could not claim he was deprived of substantive due process because of an irrebuttable presumption. *Id.* We noted the plaintiff must show he was harmed by the alleged constitutional defect, something that the plaintiff in *Jacobsma* did not show at trial. *Id.* at 346.

On the legal question of whether the imposition of liability on vehicle owners regardless of who is driving the vehicle creates an irrebuttable presumption that violates substantive due process in the ATE context, the federal cases have held that it does not, at least where the stakes involve only a small civil fine. The leading case is *Idris v. City of Chicago,* 552 F.3d 564 (7th Cir. 2009). In *Idris,* the court observed that vicarious liability on a vehicle owner is rational because it encourages owners to "take more care when lending their cars, and often they can pass the expense on to the real wrongdoer." *Id.* at 565–66. Other federal and state courts have come to the same result as *Idris* in cases involving civil penalties in the ATE context. *See, e.g., Gardner v. City of Cleveland*, 656 F. Supp. 751, 760–61 (N.D. Ohio 2009); *Fischetti v. Village of Schaumburg,* 967 N.E.2d 950, 959–60 (Ill. App. Ct. 2012); *Krieger v. City of Rochester*, 978 N.Y.S.2d 588, 603–04 (Sup. Ct. 2013);

*City of Knoxville v. Brown*, 284 S.W.3d. 330, 338–39 (Tenn. Ct. App. 2008).

As noted in *Jacobsma*, we have not addressed the question of whether liability for vehicle owners regardless of who is driving violates substantive due process. In *Hensler v. City of Davenport*, however, we considered a civil ordinance that suggested after a second occurrence of a delinquent act involving a child, a parent was presumed negligent in supervising the child and that the negligence caused the occurrence. 790 N.W.2d 569, 576 (Iowa 2015). We considered the presumption "arbitrary and irrational in light of the multiple factors that can cause [an] 'occurrence.' " *Id.* at 588.

We think this case is distinguishable from *Hensler*. The question does not really involve an "irrebuttable presumption" as is sometimes stated, but instead involves an imposition of vicarious liability on a vehicle owner when speeding events are recorded by an ATE system. As noted in *Idris*, the proposition that the vehicle owner can have an impact on the driving habits of a person driving the owner's car or upon the selection of persons who drive the owner's car is entirely rational. 552 F.3d at 566. Further, the vehicle owner may recover the fine from the third-party driver, thereby advancing the deterrence goals of the ATE ordinance. *Id.* As pointed out in *Idris*, legal systems can assign economic losses without fault to achieve deterrence goals. *Id.*

The notion that parents were deemed to be "negligent" for second occurrences of delinquency involved an irrebuttable presumption of negligence that was far less rational that the imposition of vicarious liability in this case. In addition to involving a true irrebuttable presumption that was arbitrary in nature, liability under the ordinance in *Hensler* would impose a highly personal stigma on the parents—a

determination that a parent was negligent—a factor absent in an ATE infraction matter. We think the plaintiffs' appeal on challenging the vicarious liability feature of the ATE ordinance on substantive due process grounds is without merit.

**IV. Violation of Substantive Due Process, Equal Protection, and Privileges and Immunities.**

The plaintiffs essentially reprise arguments made in *Behm*, ___ N.W.2d at ___, and *Leaf*, ___ N.W.2d at ___, suggesting that the ATE system violates the equal protection, substantive due process, and privileges and immunities clauses of the Iowa Constitution. The plaintiffs' interrelated arguments on these Iowa constitutional claims are based on the exclusion of government-owned vehicles and semi-trailer trucks from the ATE system as well as on whether there is a rational basis for the City placing certain ATE cameras on I-235.

The plaintiffs assert they have a fundamental right to travel that the ATE ordinance impinges. For the same reasons as stated in *Behm* and *Leaf*, we hold that the Des Moines ATE ordinance does not infringe any fundamental right to travel. *See Behm*, ___ N.W.2d at ___; *Leaf*, ___ N.W.2d at ___. No suspect class has been alleged. Therefore, the appropriate level of scrutiny is rational basis.

There is, however, one key procedural difference in this case compared to *Behm*. In *Behm*, the constitutional issues were raised in the context of a motion for summary judgment. In this case, the substantive due process, equal protection, and privileges and immunities questions were decided against the plaintiffs on the City's motion to dismiss.

The procedural distinction between *Behm* and this case is critical. Generally, a motion to dismiss should not be granted. We have stated that "nearly every case will survive a motion to dismiss under notice

pleading." *U.S. Bank v. Barbour*, 770 N.W.2d 350, 353 (Iowa 2009); *see also Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004). If a claim is "at all debatable," we have advised against the filing or sustaining of a motion to dismiss. *Renander v. Inc., Ltd.*, 500 N.W.2d 39, 40–41 (Iowa 1993). This case thus stands in marked contrast to *Behm*, which was decided on a motion for summary judgment, and *Leaf*, where the matter actually went to trial. *See Behm*, ___ N.W.2d at ___; *Leaf*, ___ N.W.2d at ___.

In this case, the plaintiffs challenge the use of the Nlets database, which excludes semi-trailer trucks from prosecution under the ATE ordinance, as contrary to the fundamental right to equal protection under article I, section 6 of the Iowa Constitution. The plaintiffs make similar allegations with respect to the exclusion of government-owned vehicles from the Nlets' database. The petition further claims "there is no rational basis to make an arbitrary distinction between vehicles that do not have rear license plates[] and are therefore not subject to the same traffic laws as those vehicles that do have rear license plates." The petition alleges that

> there is no rational basis to make an arbitrary distinction between drivers whose vehicles' license plates are a part of the IDOT database and [the] more than 3200 Iowa drivers who have had their licenses suppressed from the same database, or drivers who do not have rear plates on their trailers, and are therefore not subject to the same traffic laws.

The district court, however, dismissed the petition on the ground that "the City could rationally conclude a system that only photographs rear license plates is less expensive and that it is more cost-effective to capture fewer people who violate the Ordinance with a less expensive system." Further, the district court held that "[i]t may be impossible to

create a database that includes every person operating a vehicle" at the ATE locations.

Given the pleadings, we think that the plaintiffs are entitled to attempt to show that the asserted rational basis for the use of the Nlets database offered by the City, namely a cost-effective way to protect public health and safety through enforcing speeding laws, has no "basis in fact." That is the thrust of *Racing Association of Central Iowa v. Fitzgerald* (*RACI II*), where we noted that even under a rational basis test, a classification could be attacked if it is not "realistically conceivable" or does not have any "basis in fact." 675 N.W. 1, 7–8 (Iowa 2004) (emphasis omitted) (first quoting *Miller v. Boone Cty. Hosp.*, 394 N.W.2d 776, 779 (Iowa 1986)). While leeway should be given to legitimate legislative judgments under the rational basis test, plaintiffs are entitled to penetrate asserted reasons supporting legislative classifications to determine if, in fact, there is any reasonable basis for the purported rationale. *See Glendale Fed. Sav. & Loan Ass'n v. State*, 485 So. 2d 1321, 1326 (Fla. Dist. Ct. App. 1986) ("Clearly, the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing that these facts never existed or have ceased to exist."); *State v. Russell*, 477 N.W.2d 886, 889–91 (Minn. 1991) (holding challenger entitled to develop factual record to determine whether legislative justifications for classification are only theoretical or fanciful). We think the plaintiffs are entitled to attempt to prove that there is no reasonable basis in fact for the classifications implemented by the City under article I, section 6 of the Iowa Constitution.

Similarly, the district court should have allowed the plaintiffs to attempt to show factually that there is no rational safety argument to support the particular placement of ATE cameras on I-235. In

considering the substantive due process attack, as noted in *Behm*, the City need only show that safety interests are plausible and "based in fact." *Behm*, ___ N.W.2d at ___ (quoting *RACI II*, 675 N.W. at 7–8). We do not engage in de novo review of the City's safety judgments. We do not think, however, that the substantive due process challenge may be thrown out of court on a motion to dismiss.

In addition, on privileges and immunities grounds the plaintiffs challenged the different treatment between in-state and out-of-state vehicle owners under the ATE program. The district court granted the City's motion to dismiss on the ground that the pleading failed to state specifically how the ATE system treated out-of-state residents differently, how the rules placed a more onerous burden on the in-state than out-of-state vehicle owners, or how the ATE system otherwise generally burdened classes of owners. At the pleading stage, however, we cannot say there are no state of facts that the plaintiffs might show to support their claims. *See, e.g., Kingsway Cathedral v. Iowa Dep't of Transp.*, 711 N.W.2d 6, 7 (Iowa 2006); *Golden v. O'Neill*, 366 N.W.2d 178, 179 (Iowa 1985); *Lakota Consol. Indep. Sch. v. Buffalo Ctr./Rake Cmty. Sch.*, 334 N.W.2d 704, 708 (Iowa 1983).

For the above reasons, granting the motion to dismiss on these claims was not proper, and we therefore reverse the district court.

**V. Unlawful Delegation.**

The plaintiffs suggest that the ATE ordinance unlawfully delegates governmental authority to Gatso, a private entity. The arguments are generally the same as those presented in *Behm* and *Leaf*. *See Behm*, ___ N.W.2d at ___; *Leaf*, ___ N.W.2d at ___. Here, the question of unlawful delegation was presented, and decided, upon the City's motion to dismiss.

Ordinarily, of course, it is difficult to obtain dismissal on a motion to dismiss when there is the potential for factual issues. Yet, on the face of the pleadings, much of the plaintiffs' unlawful delegation argument fails. The pleadings themselves, for instance, acknowledge that Gatso reviews photographs to determine if a speeding violation occurred but then forwards the information to the City for ultimate approval. Further, assuming the alleged facts in the petition are taken as true, the mere ministerial act of causing notices to be sent to violators after a City police officer approves the violation does not amount to an unlawful delegation of governmental power to a private entity as a matter of law. *See Behm*, ___ N.W.2d at ___.

There is the issue, however, of whether the City unlawfully delegated power to Gatso with respect to calibration of equipment. The question here is whether the calibration of equipment involves judgment calls or whether it is ministerial in nature. *See Warren Cty. Bd. of Health v. Warren Cty. Bd. of Supervisors*, 654 N.W.2d 910, 914 (Iowa 2002).

The district court did not rule upon this issue in its ruling on the motion to dismiss, nor did the court rule upon the issue in its later summary judgment order. The plaintiffs did not file a rule 1.904 motion to ask the district court to address the calibration issue. As a result, the plaintiffs did not preserve the issue for our review in this case. *See Lee v. State*, 815 N.W.2d 731, 740 (Iowa 2012) (declining to address issue when issue not ruled on by district court).

## VI. Action for Damages Under the Iowa Constitution.

The plaintiffs argue that the district court erred in holding that no action for damages exists for the City's violation of the plaintiffs' constitutional rights and cite *Godfrey*, 898 N.W.2d 844. We have reversed the district court's grant of the City's motion to dismiss on equal

protection, procedural and substantive due process, and privileges and immunities grounds. Because these provisions of the constitution are self-executing, if the plaintiffs prevail on their claims they have an action for damages. *See id.* at 871.

**VII. Preemption Claims.**

**A. Preemption of Ordinance Based on Iowa Code Section 602.6102 and Iowa Code Section 364.22(4) and (6).** As in *Behm* and *Leaf*, the plaintiffs argue that the state law procedural requirements for municipal infractions contained in Iowa Code section 364.22 preempt the informal, administrative scheme offered by the City. We noted in *Behm* that to the extent a municipality seeks to assert the coercive power of government to enforce payment of a penalty for a municipal infraction, a municipality must pursue a municipal infraction under Iowa Code section 364.22. *See Behm,* ___ N.W.2d at ___. A municipality is free, however, to establish an alternate, informal procedure to pursue resolution of the matter without resort to the court if the municipality does not claim or attempt to assert the power to enforce any purported citation except through the municipal infraction provisions of Iowa Code section 364.22. Here, the Des Moines ordinance on its face does not provide that enforcement of an ordinance violation may be achieved through any means other than a municipal infraction. We therefore affirm the district court ruling in favor of the defendants on this issue.

**B. Preemption Based Upon IDOT Action.** The plaintiffs claim that the City has no choice but to eliminate the ATE cameras on I-235 in light of the evaluation conducted by IDOT and the sustaining of that evaluation after an administrative appeal. Because we have determined that the IDOT lacked the authority to promulgate its rules regulating ATE

systems, however, the plaintiffs' preemption argument based upon IDOT actions is without merit. *See City of Des Moines*, 911 N.W.2d at 434.

**VIII.  Scope of the Class.**

The court originally defined the class as

> [a]ny vehicle owner who received a [notice of violation] between December 11, 2013 and the present based on a claim of speeding from one of the speed cameras mounted at the I-235 eastbound location and who appealed the decision, went through the administrative process, was adjudicated liable and ordered to pay a penalty.

The City moved to modify the scope to add "and then did not pursue a district court action" to the end of the class definition. The district court granted the motion. Our review of the district court's determination of the scope of a class is for abuse of discretion. *Comes*, 696 N.W.2d at 320.

Because we have reversed the district court on the motion to dismiss for violations of the substantive due process, equal protection, and privileges and immunities, and have further found that the administrative hearing procedure violated the ordinance prior to its amendment by the City, we have significantly changed the landscape of this proceeding. Under the circumstances, we vacate the district court's order on class certification and remand the issue for further consideration in the district court's discretion as the case develops.

**IX.  Unjust Enrichment.**

**A. Introduction.**  On early motions, the district court ruled in favor of the defendants on the question of unjust enrichment. After the early motions were decided, the plaintiffs added a party who, in fact, had paid money to Gatso and the City. Yet, with respect to the City, at least, the district court seems to have reversed course. Although the district court earlier appeared to dismiss the unjust enrichment claim against

the City in its ruling on the City's motion to dismiss, the district court appears to have changed course when it ruled upon the later motions for summary judgment. However, the plaintiffs did not file a rule 1.904 motion was filed challenging the district court's reversal of its prior position dismissing the unjust enrichment claim against the City. Any claim regarding that inconsistency is not preserved on appeal.

**B. Unjust Enrichment Claim Against the City.** The unjust enrichment claim against the City, however, was tied to the district court's categorical ruling that the City's failure to follow its ordinance and the creation of an unauthorized administrative procedure contrary to law amounted to a violation of procedural due process for all members of the class who were subject to administrative enforcement of the ATE system.

In *Godfrey*, we determined that the plaintiffs have an action for damages for constitutional violations arising from equal protection and due process. *See* 898 N.W.2d at 871. The availability of this alternate constitutional right may have an impact on the court's willingness to allow a claim for unjust enrichment to proceed. Under the circumstances, we think the best option now is to vacate the district court ruling regarding unjust enrichment with respect to the City and remand the matter to the district court for further consideration in light of our holdings in this case.

**C. Unjust Enrichment Claim Against Gatso.** In addition to the claim against the City, the plaintiffs also claim unjust enrichment against Gatso. The district court granted Gatso's motion for summary judgment in all respects. On the date of this ruling, the plaintiffs' class certification had not been granted. The plaintiffs appealed on the unjust enrichment claim.

In the district court's ruling, it noted that Gatso stated and the plaintiffs did not dispute that the plaintiffs never paid any of the civil penalties issued against them. The plaintiffs made no effort prior to the ruling on summary judgment to add additional plaintiffs who actually paid the fine. After the ruling, however, the plaintiffs added Patrick Dagel to their list of class representatives, who had paid the penalty to Gatso, writing "[p]aid in protest" on the check.

On their cross-appeal, the plaintiffs concede that at the time the district court granted Gatso's motion for summary judgment, which was July 25, 2016, none of the plaintiffs had paid the penalty to Gatso. Lacking anyone who did pay at the time of the motion for summary judgment as a putative class representative, the plaintiffs could not bring the claim on behalf of others, and they had no claim on their own. *See, e.g., Wallace v. GEICO Gen. Ins.,* 108 Cal. Rptr. 3d 375, 379 (Ct. App. 2010) (holding a putative class representative who was refunded the amount she was seeking did not have standing to represent the class); *Held v. Macy's, Inc.,* No. 00319/09, 2009 WL 3465945, at *5–6 (N.Y. Sup. Ct. Oct. 19, 2009) (noting that to be a putative class representative to bring claims for harm on behalf of the class, the representative must themselves have suffered the harm).

We therefore affirm the district court's grant of summary judgment in favor of Gatso on the claim of unjust enrichment.

**X. Conclusion.**

We reverse the ruling of the district court finding that the City's ATE ordinance violates procedural due process.

On the plaintiffs' cross-appeal, we affirm the district court's grant of the motion to dismiss on grounds of preemption. We also affirm the

district court's grant of summary judgment to Gatso on its unjust enrichment claims.

We reverse the district court's dismissal of the equal protection, substantive due process, and privileges and immunities claims of the plaintiffs. We reverse the district court's holding that there is no action for damages under the Iowa Constitution.

In light of the changing landscape of this proceeding, we vacate the district court's order on unjust enrichment against the City and the district court's order on class certification.

We remand the case for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except Mansfield and Waterman, JJ., who concur in part and dissent in part, and Hecht, J., who takes no part.

**MANSFIELD, Justice (concurring in part and dissenting in part).**

I respectfully concur in part and dissent in part.

I concur in part III of the court's opinion.

I dissent from part IV because I would affirm dismissal of plaintiffs' equal protection and substantive due process claims.

I concur as to the result in part V. I have stated my views on the unlawful delegation issue in my concurrence in part and dissent in part in *Behm v. City of Cedar Rapids*, ___ N.W.2d ___, ___ (Iowa 2018).

I dissent from part VI because my analysis under parts III and IV leads me to the conclusion that there is no viable constitutional claim in the case.

I concur as to the result in part VII.A. I incorporate by reference what I said in *Behm*, ___ N.W.2d at ___, on the subject of state law preemption.

I concur as to parts VII.B, VIII, and IX.

In the following discussion, I will elaborate on my disagreement with part IV of the majority opinion. I will also explain why there may be serious obstacles to a potential claim that the City violated its original ordinance by implementing an unauthorized administrative process.

**I. The District Court Correctly Dismissed the Equal Protection, Substantive Due Process, and "Privileges and Immunities" Claims.**

I would affirm the dismissal of the equal protection, substantive due process, and "privileges and immunities" claims brought under the Iowa Constitution. I do not agree that merely *alleging* a violation of article I, section 6 or article I, section 9 of the Iowa Constitution makes a lawsuit impervious to a motion to dismiss and guarantees a ticket to the

discovery phase of litigation. This case provides a good illustration of when a motion to dismiss can be granted. *See Hughes v. City of Cedar Rapids*, 840 F.3d 987, 996–97 (8th Cir. 2016) (affirming dismissal of federal equal protection and substantive due process claims and noting that "[t]he [ATE] ordinance passes rational basis" and does not "shock[] the conscience").

**A.  The Equal Protection Claim Was Properly Dismissed.**  Here, the City moved to dismiss plaintiffs' allegation that it violated equal protection for the City to use an ATE system that captured most speeding vehicles but excluded semi-trailer trucks lacking visible rear license plates and government-owned vehicles that were not in the Nlets database.

In their resistance, plaintiffs did not dispute the City's contention that its enforcement mechanism was rationally related "to the state interest in providing a *cost effective* means to control speed." (Emphasis added.)  Plaintiffs simply argued that if *safety* were the only concern, covering even more vehicles would promote that interest in safety.  As plaintiffs put it, "All Vehicle Owners . . . are . . . similarly situated for safety purposes."

That's not enough.  I agree that *Racing Association of Central Iowa v. Fitzgerald* (*RACI II*), opens the door for plaintiffs on a rational basis challenge to show that the asserted grounds for the legislative distinction have no "basis in fact"—not in the sense that they are merely factually incorrect, but in the sense that they are so off the mark that the legislature could not have "rationally believed" them.  *See* 675 N.W.2d 1, 7–16 (Iowa 2004).  Plaintiffs' burden "includes the task of negating every reasonable basis that might support the disparate treatment."  *Id.* at 8.  "[T]he fit between the means chosen by the legislature and its objective

need only be rational, not perfect." *LSCP, LLLP v. Kay-Decker*, 861 N.W.2d 846, 859 (Iowa 2015). "The burden is not on the government to justify its action, but for the plaintiff to rebut a presumption of constitutionality." *McQuistion v. City of Clinton*, 872 N.W.2d 817, 831 (Iowa 2015).

Here, plaintiffs, when confronted with the City's motion to dismiss, showed no interest in taking on that burden. They didn't assert that the City's position regarding cost was irrational or that cost was not a legitimate concern. *See LSCP*, 861 N.W.2d at 861 ("Although in the process of rational basis review we do not simply accept claimed legitimacy of the interests (the ends) legislation purports to advance, LSCP does not contest the legitimacy of the interests expressly proffered by the Department in this case."); *see also Hearst Corp. v. Iowa Dep't of Revenue*, 461 N.W.2d 295, 306 (Iowa 1990) (noting that the state has a a legitimate interest in "administrative economy"). Under the rational basis test, a classification can be underinclusive so long as it is not "extremely" so. *LSCP,* 861 N.W.2d at 861; *RACI II*, 687 N.W.2d at 10. We can and should affirm dismissal of an equal protection claim where the governmental entity has asserted a legitimate reason for the classification and plaintiffs have not disputed that reason, let alone asked for the opportunity to disprove it.[6]

---

[6]In their appellate briefing, plaintiffs generally stick exclusively to the theme that *safety* is not served by the challenged classification. *See* Appellees/Cross-Appellants' Br. at 61–64; Appellees/Cross-Appellants' Reply Br. at 18–22. For example, their opening brief heading reads, "Equal Protection Rights Are Violated Where the Purpose of the Ordinance is Safety and the Classifications of Vehicle Owners Are Not Related to that Purpose." Appellees/Cross-Appellants' Br. at 61.

In a small portion of their appellate briefing, plaintiffs do acknowledge the City's *cost* argument, but only to assert that Gatso bears the cost of operating the ATE system and "therefore any increased cost" of a more comprehensive system would also be Gatso's responsibility. Appellees/Cross-Appellants' Br. at 62. This argument, raised for the first time on appeal, is a nonsequitur. As plaintiffs point out elsewhere in their

**B. The Substantive Due Process Claim Was Properly Dismissed.** I turn now to substantive due process. Plaintiffs argued below that the City had deployed the ATE systems in violation of Iowa Department of Transportation regulations and that doing so "offend[ed] judicial notions of fairness and human dignity." This argument can be quickly dispatched because we have elsewhere concluded that the IDOT regulations in question were not validly promulgated. *See* C*ity of Des Moines v. Iowa Dep't of Transp.*, 911 N.W.2d 431, 450 (Iowa 2018). In any event, a city's mere violation of state law does not establish a substantive due process violation. *See Hughes v. City of Cedar Rapids*, 112 F. Supp. 3d 817, 846 (N.D. Iowa 2015) ("Plaintiffs provide no authority for the proposition that noncompliance with state regulations implicates the Due Process Clause, and the court is aware of none."), *aff'd in part, rev'd in part on other grounds*, 840 F.3d 987; *see also Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 2013) ("It is clear . . . that, without more, the mere violation of a state law or rule does not constitute a federal due process violation."). If that were the case, every violation of law by a municipality would balloon into a constitutional violation. I would affirm this dismissal as well.[7]

---

brief, Gatso has a "contingency" arrangement under which it receives $25.00 to $27.00 per paid citation, with the remaining revenue going to the City. *Id.* at 15, 24. Plaintiffs thus ignore the fact that Gatso *does charge* the City for operating the ATE system, in the form of an offset against the City's revenue. Presumably, if Gatso's costs increased, the offset would be greater. In any event, plaintiffs have demonstrated no interest in proving otherwise.

[7]The majority treats plaintiffs' substantive due process argument as if it were a general attack on camera placement *independent* of the IDOT regulations. It is not. Both here and below, plaintiffs have made it clear that if a fundamental right is not involved, their substantive due process are predicated on the City's violation of IDOT regulations, a matter we have already addressed in the *City of Des Moines* case. *See* Appellees/Cross-Appellants' Br. at 64; Appellees/Cross-Appellants' Reply Br. at 24–25.

**C. The "Privileges and Immunities" Claim Was Properly Dismissed.** There is no reason to revive this claim, either. It is unclear what plaintiffs are even claiming. Although the City does provide different types of administrative hearings for out-of-state and in-state residents, plaintiffs are not complaining about that. Apparently their complaint is that the City's ATE systems discriminate against people from outside the City who are less familiar with these "speed traps." This argument presumes that the right to travel embraces the right to speed and is not supported by any relevant legal authority. Any speed trap, whether automated or human-operated, is going to fall more heavily on those who aren't familiar with it. I would affirm the dismissal of this claim.[8]

**II. There May Be Serious Obstacles to a Claim That the City Violated Its Own Ordinance.**

I agree with the majority that the City appears to have violated its original ATE ordinance. It implemented an off-the-books administrative process that the ordinance doesn't provide for at all. I therefore join in the majority's footnote 3 which suggests the possibility that the district court on remand might consider a possible motion to amend the pleadings to raise a claim for violation of the ordinance. However, I write separately to note two potential obstacles to such a claim. There may be others.

The ordinance has since been amended in July 2017 to authorize an administrative process. Therefore, I question whether either Reuven

---

[8]Plaintiffs' references to the "privileges and immunities" clause of the Iowa Constitution are to the second clause of Article I, section 6, which is nowadays generally regarded as an equal protection guarantee and is also the basis of plaintiffs' equal protection claim. *See* Edward M. Mansfield & Conner L. Wasson, *Exploring the Original Meaning of Article I, Section 6 of the Iowa Constitution*, 66 Drake L. Rev. 147, 148 (2018).

Weizberg or David Veng-Pedersen can pursue claims for relief under the old ordinance. They never paid their citations. Lacking damages, they would be seeking only injunctive and declaratory relief based on an ordinance that has since been amended. That sounds moot to me. *See, e.g., Iowa Bankers Ass'n v. Iowa Credit Union Dep't*, 335 N.W.2d 439, 442 (Iowa 1983) (finding a challenge to administrative rules moot where the challenged rules had been rescinded). In my view, Weizberg and Veng-Pedersen should be dismissed from the litigation. At a minimum, I believe the City can raise mootness as a defense.

Jacob Dagel is in a different position. He went through an administrative hearing before the ordinance was changed and paid his citation. Potentially, he and others like him could pursue damages claims for recovery of their fines based on the City's failure to comply with its own ordinance.

Yet, the City may be able to demonstrate that someone like Dagel who paid the citation after an unauthorized administrative process nonetheless committed the traffic violation and therefore suffered no recoverable damages. This may qualify as a defense to a damages claim.

**III. Conclusion.**

For the foregoing reasons, I concur in part and dissent in part.

Waterman, J., joins this concurrence in part and dissent in part.